2006 ME 50

**Kathleen C. McGEE**

v.

**SECRETARY OF STATE et al.**

Supreme Judicial Court of Maine.

Argued: April 25, 2006.

Decided: May 4, 2006.

---

Gerald F. Petruccelli, Esq. (orally), Bruce A. McGlauflin, Esq., Petruccelli, Martin & Haddow, LLP, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Phyllis Gardiner, Asst. Atty. Gen. (orally), Augusta, for defendant.

Michael A. Duddy, Esq. (orally), Kelly, Remmel & Zimmerman, Portland, for Intervenor Mary Adams.

Richard L. O'Meara, Esq. (orally), Christopher B. Branson, Esq., Murray, Plumb & Murray, Portland, for amicus curiae Democracy Maine, Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and DANA, ALEXANDER, CALKINS, and SILVER, JJ.

Concurrence: CLIFFORD, J.

Concurrence: LEVY, J.

SAUFLEY, C.J.

[¶ 1] Intervenor Mary Adams appeals from the judgment of the Superior Court (Kennebec County, *Marden, J.*), vacating a decision of the Secretary of State in which the Secretary concluded that a citizen initiative petition known as the "Taxpayer's Bill of Rights" is supported by the timely filing of a sufficient number of valid signatures. The court held that, pursuant to 21–A M.R.S. § 903–A (2005), the Secretary erred in accepting petitions that were filed one year and three days after the petition was issued. Because we conclude that the provision of section 903–A requiring petitions to be filed within one year of the petition's date of issuance is inconsistent with the Maine Constitution, we vacate the judgment of the Superior Court and remand for entry of judgment affirming the decision of the Secretary of State.

## I. BACKGROUND

[¶ 2] Mary Adams submitted an application for a direct initiative of legislation to the Secretary of State in August 2004. After making revisions to the proposed language of the petition, the Secretary approved the form of the petition to be submitted to the voters, and he issued the form to Adams on October 21, 2004. *See* 21–A M.R.S. § 901 (2005). Following the printing of petitions as required by 21–A M.R.S. § 901(3–B) (2005), Adams and other supporters of the initiative (whom we refer to collectively herein as Adams) began collecting signatures. On Friday, October 21, 2005, Adams filed petitions with the Secretary containing 54,127 signatures. On the next business day, Monday, October 24, 2005, at 8:15 A.M., Adams filed petitions containing an additional 4,024 signatures.

[¶ 3] The number of signatures required for the measure to validly invoke

the constitutional requirement of presentation to the Legislature was 50,519 (ten percent of the total number of votes for governor in the 2002 election). ME. CONST. art. IV, pt. 3, § 18(2). Although it is not clear in the record, it appears to be undisputed that the petitions filed on October 21 did not contain sufficient valid signatures to meet the constitutionally-required total. Thus, the petitions filed on October 24 were necessary to a successful filing. The Secretary reviewed all of the petitions and issued his decision on February 21, 2006.[1] Counting the petitions filed on both October 21 and October 24, he found that Adams had submitted 6,540 invalid signatures and 51,611 valid signatures. The Secretary thus declared the petition to be valid, meaning that it contained enough signatures to qualify for a vote on the citizens' initiative.

[¶ 4] On February 24, 2006, Kathleen McGee filed in the Superior Court a petition for review of final agency action pursuant to M.R. Civ. P. 80C and 21–A M.R.S. § 905(2) (2005), challenging the Secretary's decision to accept the petitions filed on October 24, 2005. The court granted Adams's motion to intervene. Following oral argument, the court entered its judgment on April 4. The court vacated the Secretary's decision, holding that the Secretary had no authority to accept the petitions that were filed beyond the statutory deadline and the deadline was not uncon-

stitutional because "[i]t is patently obvious that the legislature has enacted a mandatory scheme to provide a degree of impossibility in the violation of the constitutional provision requiring signatures no older than one year from the date on the petition." Adams appealed, and we ordered expedited briefing and argument in accordance with 21–A M.R.S. § 905(3) (2005).

## II. DISCUSSION

### A. Standard of Review

[¶ 5] Because the Superior Court acted as an intermediate appellate court, we directly review the Secretary of State's decision. *Palesky v. Sec'y of State,* 1998 ME 103, ¶ 9, 711 A.2d 129, 132. This appeal involves the interpretation of constitutional and statutory provisions, which are issues of law that we review de novo. *See Melanson v. Sec'y of State,* 2004 ME 127, ¶ 8, 861 A.2d 641, 644; *see* 21–A M.R.S. § 905(3) ("The standard of review shall be the same as for the Superior Court.").

### B. Constitutional and Statutory Framework

[¶ 6] The power of the people of Maine to legislate by direct initiative is set forth in article IV, part third, section 18 of the Maine Constitution. Section 18 includes two timeframes relevant to this case. The

---

1. The Constitution provides for the enactment of statutes permitting judicial review of the Secretary's decision, "to be completed within 100 days from the date of filing of a written petition in the office of the Secretary of State." ME. CONST. art. IV, pt. 3, § 22. We are unable to comply with that time limit in this case because the Secretary, apparently following the different timeframe set forth in 21–A M.R.S. § 905(1) (2005), took more than 100 days after the filing of the petitions to reach his decision. *See Allen v. Quinn,* 459 A.2d 1098, 1100 n. 11 (Me.1983) ("[T]he con-

stitutional mandate that judicial review of the Secretary of State's decision of the validity of the initiative petition be completed within one hundred days from the date of its filing in the Secretary of State's office means simply that the Secretary of State may not delay making his decision as long as the implementing statute purports to permit." (citation omitted)). We do not believe, and no party has suggested, that the delay by the Secretary should have the effect of insulating his decision from judicial review.

first sets filing dates anchored to the schedules of legislative sessions:

> The electors may propose to the Legislature for its consideration any bill ... by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of 5:00 p.m., on or before the 50th day after the date of convening of the Legislature in first regular session or on or before the 25th day after the date of convening of the Legislature in second regular session. If the 50th or 25th day, whichever applies, is a Saturday, Sunday, or legal holiday, the period runs until the hour of 5:00 p.m., of the next day which is not a Saturday, Sunday, or legal holiday.

ME. CONST. art. IV, pt. 3, § 18(1).

[¶ 7] The second timeframe is a limit related to the age of the signatures gathered by circulators. "The date each signature was made shall be written next to the signature on the petition, and no signature older than one year from the written date on the petition shall be valid." *Id.* § 18(2).

[¶ 8] Applying these constitutional timeframes, the fiftieth day after the convening of the first regular session of the 122nd Legislature was January 20, 2005, and the twenty-fifth day after the convening of the second regular session was January 30, 2006. All of the signatures in the petitions presented by Adams were obtained within one year of October 24, 2005. Thus, there is no question that by filing sufficient valid signatures on or before October 24, 2005,

and before January 30, 2006, Adams met the *constitutional* filing requirements for proposing an initiative to the second regular session of the 122nd Legislature.

[¶ 9] We turn then to the statutory provision at issue. The Constitution authorizes the Legislature to enact laws "not inconsistent with the Constitution for applying the people's veto and direct initiative" and "to establish procedures for determination of the validity of written petitions." ME. CONST. art. IV, pt. 3, § 22;[2] *see also Me. Taxpayers Action Network v. Sec'y of State,* 2002 ME 64, ¶ 10, 795 A.2d 75, 79 ("The initiative provisions of the Maine Constitution also grant the Maine Legislature the authority to carry out those constitutional mandates through legislation.").

[¶ 10] Exercising that authority, the Legislature has enacted a number of statutes establishing procedural rules for initiatives. *See* 21–A M.R.S. §§ 901–906 (2005). Pertinent to the matter before us is 21–A M.R.S. § 903–A, which provides that petitions must be filed within one year of their issuance:

> 1. Filing. Filing of petitions in accordance with the deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18 must be completed within one year of the date of issuance under this chapter.

> 2. Invalid petition. Petitions not filed in accordance with the deadlines specified in the Constitution of Maine,

**2.** Article IV, part third, section 22 of the Maine Constitution provides in full:

> Until the Legislature shall enact further laws not inconsistent with the Constitution for applying the people's veto and direct initiative, the election officers and other officials shall be governed by the provisions of this Constitution and of the general law, supplemented by such reasonable action as may be necessary to render the preceding

sections self executing. The Legislature may enact laws not inconsistent with the Constitution to establish procedures for determination of the validity of written petitions. Such laws shall include provision for judicial review of any determination, to be completed within 100 days from the date of filing of a written petition in the office of the Secretary of State.

Article IV, Part Third, Section 18 within one year of the date of issuance under this chapter are invalid for circulation. The meaning and validity of this statute are the central issues in this appeal.

C. Authority of the Secretary of State to Accept a Late Filing

[¶ 11] The date of issuance of Adams's petition was October 21, 2004. *See* 21–A M.R.S. § 901. The petitions she filed on October 24, 2005, thus were not filed within one year of the date of issuance as required by section 903–A. Adams and the Secretary nevertheless argue that the Secretary had the authority to accept those petitions.

[¶ 12] In assessing their arguments, we begin with the plain language of the statute. *See Melanson,* 2004 ME 127, ¶ 8, 861 A.2d at 644. We agree with McGee and the trial court that the plain language of section 903–A(1) establishes a filing deadline one year after the date of issuance. It is apparent that the statutory scheme anticipates that an initiative petition must meet both the constitutional timeframes and the statutory deadline calculated from the date of issuance. Neither the Constitution nor the statutes explicitly provides the Secretary with the authority to extend those very specific timeframes.

[¶ 13] Adams and the Secretary argue, however, that petitions may be filed after the one-year deadline in section 903–A(1) as long as they "substantially comply" with constitutional and statutory requirements. The Secretary cites cases from a number of other states in which courts have adopted a substantial compliance standard in order to protect the people's right under the state constitution to legislate by direct initiative. *See, e.g., Costa v. Superior Court,* 37 Cal.4th 986, 39 Cal.Rptr.3d 470, 128 P.3d 675, 690 (2006); *Feldmeier v. Watson,* 211 Ariz. 444, 123 P.3d 180, 183 (2005); *Armstrong v. O'Toole,* 917 P.2d 1274, 1276 (Colo.1996). He also cites a concurring opinion in *Loontjer v. Robinson,* 266 Neb. 902, 670 N.W.2d 301, 309–10 (2003) (Hendry, C.J., concurring in the result) (arguing that substantial compliance standard always applies to initiative procedures). We are more convinced, however, by the majority opinion in that case, where the Nebraska Supreme Court held that a substantial compliance standard is appropriate only when the provision at issue is directory rather than mandatory. *Id.* at 307–08. That is consistent with the approach taken in an advisory opinion in which the Justices of this Court concluded that a statute setting the time for closing the polls was directory, so that leaving the polls open one-half hour late did not invalidate the election, but a statute requiring voting booths was mandatory, so that forcing voters to mark their ballots in an open room did invalidate the election. *Opinion of the Justices,* 124 Me. 453, 474–75, 126 A. 354, 365 (1924).

[¶ 14] Adams and the Secretary contend, based on that 1924 advisory opinion and other cases applying the mandatory-directory distinction, that the one-year time limit in section 903–A is directory and accordingly may not be binding. We need not discuss our prior decisions on this issue because they have been superseded, for purposes of the interpretation of this statute, by two legislative enactments, one of general effect and one particular to the election law.[3] Title 1 M.R.S. § 71 (2005)

---

**3.** In *Davric Maine Corp. v. Maine Harness Racing Commission,* 1999 ME 99, ¶¶ 13–14, 732 A.2d 289, 294, we held that statutory procedures for electing harness racing bargaining agents were directory, not mandatory, and that deviation from the statutory requirements did not invalidate the election. We note, however, that a number of factors

offers general rules to "be observed in the construction of statutes, unless such construction is inconsistent with the plain meaning of the enactment." Subsection 9–A of that section provides, "'Shall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement.... This subsection applies to laws enacted or language changed by amendment after December 1, 1989."

[¶ 15] The Legislature indicated a particularly firm resolve on this point when it enacted, almost simultaneously, a very similar provision directly applicable to election laws. Title 21–A M.R.S. § 7 (2005), effective September 30, 1989, *see* P.L.1989, ch. 166, § 1, provides in relevant part: "When used in this Title, the words 'shall' and 'must' are used in a mandatory sense to impose an obligation to act or refrain from acting in the manner specified by the context." Sections 71(9–A) and 7 are both applicable to the interpretation of section 903–A, the relevant portions of which were enacted in 1994 and amended in 1998. *See* P.L.1993, ch. 695, § 35; P.L. 1997, ch. 637, § 1.

■ [¶ 16] The rules of construction provided by sections 71(9–A) and 7 are dispositive here in the absence of statutory language plainly supporting a contrary interpretation. The word "must" in section 903–A(1) is mandatory in meaning. The statute requires that initiative petitions be filed within one year of the date of issuance, and gives the Secretary no discretion or authority to accept late-filed petitions, no matter how substantially they may comply with other statutory or constitutional requirements.[4]

[¶ 17] The statutory deadline means what is says. The petitions Adams filed on October 24 were late pursuant to section 903–A(1), and, if that statute is consistent with the Constitution, the court did not err in concluding that the Secretary had no authority to accept them.

## D. Constitutionality of Section 903–A

### 1. Standard of Review

[¶ 18] We turn then to the constitutionality of section 903–A. We first note that because section 903–A is not ambiguous, we have no occasion to apply the rule of

---

distinguish *Davric* from this case: the general statutory rule of construction then found in 1 M.R.S.A. § 71(9–A) (Supp.1998) was not raised by the parties in their briefs; there was no applicable subject-specific statutory rule of construction to reinforce the general rule, such as 21–A M.R.S. § 7 (2005) provides here; a countervailing rule of construction was applicable that required deference to the agency's interpretation of the statute, *see* 1999 ME 99, ¶ 7, 732 A.2d at 293; and the facts suggested that strict compliance with the statute was impossible, *see id.* ¶¶ 12–14, 732 A.2d at 294. Taking these factors into account, we conclude that the *Davric* precedent does not control the interpretation of 21–A M.R.S. § 903–A (2005) in this case.

4. Adams also argues that even if she did not sufficiently comply with the deadline of section 903–A(1), the only sanction for her noncompliance is that the petitions are "invalid for circulation." 21–A M.R.S. § 903–A(2).

Invalid for circulation, she says, implies valid for filing. We disagree. The mandatory nature of section 903–A(1) makes an explicit sanction of invalidity for filing unnecessary. The requirement that "[f]iling ... must be completed within one year of the date of issuance" necessarily implies a prohibition on later filing. *Id.* § 903–A(1). Thus, section 903–A(2) is most reasonably read to impose an additional sanction of invalidity for future circulation. The Legislature did not intend the time limit of section 903–A(1) to be an empty and easily avoided formality. The effect of subsection 2 is that, once the proponents of an initiative miss the one-year deadline in subsection 1, they cannot simply ask the Secretary to re-issue the same petition form, thus triggering a new deadline a year later, and then circulate petitions and file them with signatures gathered both before and after the missed deadline.

construction that prefers interpretations of statutes that do not raise constitutional problems. *See Bisbing v. Me. Med. Ctr.,* 2003 ME 49, ¶ 5, 820 A.2d 582, 584. *Cf. Ferency v. Sec'y of State,* 409 Mich. 569, 297 N.W.2d 544, 550 (1980) ("[W]here ... there is doubt as to the meaning of legislation regulating the reserved right of initiative, that doubt is to be resolved in favor of the people's exercise of the right."). Moreover, except for the stark fact that the operation of the statute prevented the presentation of the petition to the Legislature, we have no record of any other effect of the statute on these petitioners. Therefore, we engage in a facial review of the constitutionality of section 903–A to determine whether there are "no circumstances in which it would be valid." *Conlogue v. Conlogue,* 2006 ME 12, ¶ 5, 890 A.2d 691, 694.

[¶ 19] In determining the constitutionality of the statute, we ask: (1) did the Legislature have the authority to enact statutes creating procedures related to the initiative process; (2) if so, is the statute inconsistent on its face with the Constitution; and (3) if not, does the statute otherwise create an abridgment of or undue burden upon the people's constitutional right of initiative.

2. Legislative Authority

▆ [¶ 20] There is no question that the Legislature is authorized by the Constitution to enact laws "for applying" the direct initiative right of the people and "to establish procedures for determination of the validity of written petitions." Me. Const, art. IV, pt. 3, § 22. This authorization is limited, however, by the existing constitutional scheme and the explicit direction that the statutes must be "not inconsistent with the Constitution." *Id.* In addition, legislative action to implement the right is permitted, but not required. The constitu-

tional provisions were written in such a fashion that they could be entirely self-executing:

> Although the constitution (art. IV, pt. 3, § 22) contemplates that the legislature will enact laws to implement the direct initiative, any such laws, of course, must be consistent with the constitutional provision setting up the direct initiative, *i.e.,* section 18; until the legislature does enact laws not inconsistent with section 18, the constitutional provisions are expressly declared to be self-executing.

*Allen v. Quinn,* 459 A.2d 1098, 1100 (Me. 1983) (footnote omitted). Accordingly, although the Legislature has the authority to enact laws providing for the implementation of the initiative right, any legislative implementation must respect the substance of the constitutional right.

▆ [¶ 21] We have previously recognized the importance of the right of initiative, and again conclude that the right of the people to initiate and seek to enact legislation is an absolute right. *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 231, 60 A.2d 908, 911 (1948). It cannot be abridged directly or indirectly by any action of the Legislature. *Id.* In short, the Legislature is authorized to enact implementing legislation, but cannot do so in any way that is inconsistent with the Constitution or that abridges directly or indirectly the people's right of initiative.

3. Is the Statute Inconsistent with the Constitution?

▆ [¶ 22] The question of the statute's consistency with the Constitution is at the heart of this case. The statute creates a limited period for circulation and establishes a one-year deadline from issuance of the petition to filing with the Secretary of State for the exercise of the people's right of initiative. The Constitution not only

does not require such expeditious filing, it establishes no starting date from which a petition's filing must be measured.

[¶ 23] To be sure, the Constitution does not *explicitly* prohibit or allow the establishment of a deadline. The question thus presented is whether the Constitution contains, *implicit* within its provisions, the right of the circulator, within reason, to choose when to file the petitions. For the following reasons, we conclude that it does.

[¶ 24] Any analysis of the initiative provisions in the Constitution must take account of their significance and purpose. The direct initiative right was added to the Constitution by an amendment effective in 1909. Resolves 1907, ch. 121, *passed in* 1908. Prior to the enactment of the initiative amendment, the ability to enact legislation rested solely with the Legislature. The amendment placed in the hands of the people a powerful tool for shaping and creating legislation. This fundamental change in the form of government reserved directly to the people a power that had previously been held solely by the people's elected representatives.

> In short, the sovereign which is the people has taken back, subject to the terms and limitations of the amendment, a power which the people vested in the Legislature when Maine became a state. The significance of this change must not be overlooked, particularly by this court whose duty it is to so construe legislative action that the power of the people to enact their laws shall be given the scope which their action in adopting this amendment intended them to have.

*Farris*, 143 Me. at 231, 60 A.2d at 910–11.

[¶ 25] "The broad purpose of the direct initiative is the encouragement of participatory democracy. By section 18 'the people, as sovereign, have retaken unto themselves legislative power,' and that constitutional provision must be lib-

erally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." *Allen*, 459 A.2d at 1102–03 (quoting *Opinion of the Justices*, 275 A.2d 800, 803 (Me.1971)); *see also League of Women Voters v. Sec'y of State*, 683 A.2d 769, 771 (Me.1996); *Wagner v. Sec'y of State*, 663 A.2d 564, 566 (Me.1995). Applying this rule of construction to the issue before us, section 18 cannot be said merely to *permit* the direct initiative of legislation upon certain conditions. Rather, it reserves to the people the *right* to legislate by direct initiative if the constitutional conditions are satisfied.

[¶ 26] It is against this backdrop that we review the constitutional initiative provisions. There are only two time-based requirements related to filing contained in the Constitution. First, if petitions are not filed by the fiftieth day after the start of the first regular session or the twenty-fifth day after the start of the second regular session, they cannot be addressed to that particular session of the Legislature. No constitutional provision, however, prevents them from being filed later and addressed to a later session. Second, when the petitions *are* filed, only signatures that were obtained within one year of the date of filing will be valid.

[¶ 27] Pursuant to this constitutional scheme, circulators have significant flexibility in determining when to file with the Secretary of State. This flexibility is not simply an oversight or an unimportant part of the constitutional right of initiative. The process of collecting the number of signatures required to initiate a petition can be arduous. There may be fits and starts along the way. There may be unforeseen delays. Thus, allowing the circulators reasonable flexibility in completing the process is not only consistent with the constitutional right at issue, we conclude it

is an integral component of the constitutional scheme.

[¶ 28] We turn then to the statute limiting the circulation time to no more than one year. That one-year deadline, found in the current version of section 903–A, was enacted in 1998. P.L.1997, ch. 637, § 1. It substantially reduced the three-year deadline previously enacted in 1994. *See* P.L.1993, ch. 695, § 35 (codified at 21–A M.R.S.A. § 903–A (Supp.1994)). The amendment reducing circulation time to one year was introduced at the request of the Secretary of State's office, 3 Legis. Rec. H–1761 (2d Reg.Sess.1998), and followed closely on the heels of the discovery of fraud in the presentation of a different initiative petition, *see Palesky*, 1998 ME 103, ¶ 3, 711 A.2d at 130.

[¶ 29] The legislative history of the 1998 amendment discloses the reasons for the reduction in circulation time: to prevent "stale" signatures from being submitted, to generally discourage forgery and other signature-related chicanery, and to make statutory deadlines "consistent with the Constitution." 3 Legis. Rec. H–1761 (2d Reg.Sess.1998); *see also* L.D.2082, Summary (118th Legis.1998). Legislators were particularly concerned that a longer circulation period left an opportunity for an unscrupulous initiative proponent to perpetrate a fraud by altering the dates of signatures that were more than one year old, as had happened in the then-recent high-profile case. 3 Legis. Rec. H–1761 (2d Reg.Sess.1998); *see Palesky*, 1998 ME 103, ¶ 3, 711 A.2d at 130.

[¶ 30] One intended and practical effect of the statutory one-year circulation period is to relieve the Secretary of the responsibility of examining the dates of signatures on petitions to determine whether any of them are more than one year old. The Secretary points out, however, that the dates must still be scrutinized to be sure that the signatures were affixed before the circulator's oath and the municipal registrar's certification. *See* ME. CONST. art. IV, pt. 3, § 20. Nonetheless, the one-year deadline in section 903–A does remove the opportunity for one type of fraud, and to that extent, it undoubtedly has a beneficial effect on the integrity of the initiative process.

[¶ 31] We also agree with McGee that in aligning the one-year age limit for signatures with a statutory circulation deadline of one year, the legislative *intention* was to make the statute more consistent with the Constitution. Unfortunately, because the two timeframes have very different effects on the process, the intended consistency has not been achieved.

[¶ 32] In contrast to the statute, the constitutional signature-age provision, limiting the period of time within which signatures, once filed, will be found valid, does not establish a filing deadline tied to anything other than the timing of the legislative session.[5] Nothing in the Constitution requires that petitions be filed within a year of the date of the first signature or invalidates an entire batch of petitions merely because some signatures are too old. Rather, the Constitution leaves initia-

---

**5.** Pursuant to article IV, part third, section 18(2), no signature is valid if it is more than one year old at the time of filing with the Secretary. The "written date on the petition" referred to in section 18(2) is necessarily the date of each signature. The Constitution specifically empowers the Legislature to create procedures for determining validity, ME. CONST. art. IV, pt. 3, § 22, and 21–A M.R.S.

§ 905(1) authorizes the Secretary to determine validity. The Secretary can determine validity only when petitions are filed with him for presentation to the Legislature. *See* ME. CONST. art. IV, pt. 3, § 18(1). Thus, the date of filing with the Secretary of State must be the date from which the age of signatures is measured for purposes of section 18(2).

tive proponents free to file petitions when they choose, understanding that any signatures that are more than one year old at filing will not be counted toward their goal.

[¶ 33] Thus, although both the signature-age provision of the Constitution and the statutory limit on circulation use a one-year period, they create very different limits on the circulator's ability to present an initiative to the Legislature. When viewed in light of the constitutional scheme, the statutorily imposed one-year deadline for filing petitions is a substantial restriction, directly inconsistent with the circulator's more flexible options provided by the Constitution.

[¶ 34] Another inconsistency exists in the actual number of days available for collecting signatures when the Constitution is compared with the statute. Any signature not more than one year old will be valid pursuant to the Constitution, assuming other requirements are met. Yet, pursuant to the statute, less than a year will actually be available for collecting those signatures. Even when an initiative proponent is fully organized from the start and plans to circulate petitions as soon as possible after issuance, it may take several days to have the petitions printed, as required by 21–A M.R.S. § 901(3–B), and distributed throughout the state, with the result of effectively reducing the constitutional signature-validity period. Similarly, when the petitions are delivered to the local governments for certification, the circulators must, by necessity, stop collecting signatures, thus reducing by another ten days the opportunity for signature collection and making determinations regarding the timing of signature collection all the more critical.[6] See ME. CONST. art. IV, pt. 3, § 20. Moreover, because the Secretary

of State controls the date of the petition's "issuance," see 21–A M.R.S. § 901, the start time of the statute's one-year cycle may not readily correspond to the circulator's choice of time for collecting signatures. And since, pursuant to section 903–A, the issuance date determines the filing deadline, it is the Secretary of State, not the circulator, who will actually choose the filing deadline if section 903–A is enforced.

[¶ 35] It follows that section 903–A substantially restricts the options provided by the Constitution, ME. CONST. art. IV, pt. 3, § 18(1), which allows the circulators to choose to present their petitions to either the first or second regular session of the Legislature. In contrast, applying the statute, any petition, once issued, *must* be filed within one year, 21–A M.R.S. § 903–A(1), and, once filed, must be presented to the next legislative session to which it could be presented, pursuant to section 18(1). Again, the Constitution, in contrast to the statute, provides a flexible time-frame rather than a limited period.

[¶ 36] In reaching this conclusion we are mindful that the Legislature itself understands the legislative session dates set out in the Constitution as the truest "deadlines." Notwithstanding the one-year deadline referenced in section 903–A, section 901(1) specifically provides: "A direct initiative of legislation must meet the filing deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18." No other limitations, no deadline tied to the date of issuance, and no reference to section 903–A are contained in section 901(1).

[¶ 37] Moreover, in setting the time-frames for the Secretary's determination

---

**6.** Although the same ten-day reduction occurs in implementation of the constitutional signature-staleness provision, the start date of collection can more flexibly take that into account in the absence of the statute's rigid clock.

of validity, section 905(1) requires the Secretary to act within thirty days after "the final date for filing the petitions in the Department of the Secretary of State under the Constitution of Maine, Article IV, Part Third, Section ... 18." Again, no reference is made to the deadline set out in section 903–A.

[¶ 38] Thus, the one-year-from-issuance deadline established by section 903–A is inconsistent with both the Constitution and statutory provisions on point. While the Legislature may have the authority, pursuant to article IV, part third, section 22, to set reasonable limits on the time allowed for circulating and filing petitions, the one-year limit set by section 903–A is inconsistent with section 18 of the Constitutional provisions and conflicts with statutory provisions acknowledging section 18.

[¶ 39] In sum, section 903–A(1) is facially inconsistent with the Constitution because it denies initiative proponents the reasonable flexibility allowed by the Constitution to circulate their petitions, to choose a filing date, and to file up to the dates set out in article IV, part third, section 18. No matter how salutary the Legislature's motives in enacting it, the statute conflicts with the timeframes set by the Constitution, and therefore it cannot stand.[7]

### 4. Abridgment of Rights

[¶ 40] Because we have concluded that section 903–A is inconsistent with the constitutional provisions creating the people's right to initiate legislation, we do not further address the question of abridgment of the constitutionally-protected right, except to say that the same limitations that make the statute inconsistent with the Constitution could also be found to directly or indirectly abridge that right.

### 5. Conclusion

[¶ 41] Accordingly, in keeping with our responsibility to liberally construe the provisions establishing the constitutional initiative process, we must conclude that 21–A M.R.S. § 903–A is inconsistent with the provisions of the Constitution setting forth the people's direct initiative right. We therefore declare invalid subsections 1 and 2 of section 903–A. Because the one-year statutory deadline is invalid, the Secretary did not err in accepting and counting the petitions Adams filed on October 24, 2005.

The entry is:

Judgment vacated. Remanded for entry of judgment affirming the decision of the Secretary of State.

CLIFFORD, J., concurring.

[¶ 42] I would vacate the judgment of the Superior Court, but for different reasons than those of the Court. Pursuant to applicable rules of statutory construction, I

---

7. We note that courts in other states have struck down as unconstitutional statutes that prescribed filing deadlines for initiative petitions stricter than those found in their state constitutions. *Husebye v. Jaeger*, 534 N.W.2d 811, 816 (N.D.1995) (invalidating statute requiring filing by 5 P.M., when constitution was interpreted to allow submission by midnight; "It is obvious that a statute which shortens the constitutionally prescribed period for submission of petitions hampers, restricts, and impairs the referral powers reserved to the people ...."); *Turley v. Bolin*, 27 Ariz.App. 345, 554 P.2d 1288, 1292–93 (1976) (striking down statute requiring filing five months before election, when constitutional deadline was four months); *Yenter v. Baker*, 126 Colo. 232, 248 P.2d 311, 317 (1952) (invalidating statutory deadline of eight months, when constitution allowed filing up to four months, before election; "Decreasing the required time for signatures curtails [and] may make impossible the enjoyment of the right reserved by the Constitution ...."); *see also State ex rel. Citizens Proposition for Tax Relief v. Firestone*, 386 So.2d 561, 567 (Fla.1980) (striking down Secretary of State regulation).

would avoid construing 21–A M.R.S. § 903–A (2005) to be unconstitutional. Rather, I view section 903–A as being ambiguous, and as being susceptible to two reasonable interpretations that do not render it unconstitutional. First, it can be construed *not* to invalidate for filing purposes circulated petitions filed more than one year from the date of their issuance. Secondly, even if the one-year statutory deadline in section 903–A were to be read as the deadline applying to filing of the petitions, that one-year statutory deadline can and should be read to grant to the Secretary of State some discretion to act as he did in this case in reviewing and accepting the petitions filed by Mary Adams on October 24, 2005.

[¶ 43] In holding that section 903–A is unconstitutional, the Court finds no ambiguity in the statute. The Court relies on rules of construction found at 1 M.R.S. § 71(9–A) (2005) and 21–A M.R.S. § 7 (2005) to conclude that the word "must" in section 903–A(1) is mandatory, and operates to invalidate any petitions filed by Mary Adams after October 21, 2005. The Court then further concludes that section 903–A is in conflict with the applicable provisions of the Maine Constitution and strikes down its provision. *See* ME. CONST. art. IV, pt. 3, § 18. I view the statute differently, and, applying what I believe to be the proper rules of statutory construction, I would conclude that section 903–A, when properly construed, is constitutional, and that the Secretary of State properly accepted all the petitions filed by Mary Adams, including those filed on October 24.

[¶ 44] A cardinal rule of statutory construction is that "if we can reasonably interpret a statute as satisfying . . . constitutional requirements, we must read it in such a way, notwithstanding other possible unconstitutional interpretations of the

same statute." *Rideout v. Riendeau,* 2000 ME 198, ¶ 14, 761 A.2d 291, 297–98. Accordingly, if section 903–A is reasonably susceptible to more than one interpretation, one that is inconsistent with the provisions of the Maine Constitution and renders the statute constitutionally suspect, and another that is less restrictive and consistent with the Constitution, the latter interpretation should be used.

[¶ 45] This is particularly true in this case, involving the citizen initiative provisions of the Constitution. In *Allen v. Quinn,* we held that such provisions "must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." 459 A.2d 1098, 1102–03 (Me.1983). Section 903–A, a statute implementing the constitutional provisions granting citizens the right to directly initiate legislation, should be afforded the same liberal construction.

I.

[¶ 46] I agree that the language of section 903–A *could* be read the way the Court reads it—that the mandatory deadline for the filing of Adams's petitions was October 21, 2005, and that no petitions filed after that date can be valid. In my view, however, the statute is not free of ambiguity and can be construed liberally to facilitate the right of the people to initiate legislation and to avoid its being declared unconstitutional. There is one construction of the statute that does not invalidate, for purposes of *filing,* the petitions that were turned in to the Secretary of State on October 24, 2005.

[¶ 47] Section 903–A provides in its entirety:

§ 903–A. Circulation

Petitions issued under this chapter may be circulated by any registered voter.

**1. Filing.** Filing of petitions in accordance with the deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18 must be completed within one year of the date of issuance under this chapter.

**2. Invalid Petition.** Petitions not filed in accordance with the deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18 within one year of the date of issuance under this chapter are invalid for circulation.

21–A M.R.S. § 903–A.

[¶ 48] When read in isolation from subsection 2, subsection 1 provides that a petition must satisfy both the deadline established in section 18(1) of the Constitution, as well as the deadline that is one year from the date of the issuance of the petitions by the Secretary of State. Accordingly, based on the language of section 903–A(1) alone, one could reasonably conclude that the petitions presented to the Secretary of State by Adams on October 24 are invalid because, although all of the petitions were circulated within one year of the date of issuance, and were filed prior to the next occurring constitutional deadline, some of the petitions were not filed within the statutory deadline of one year from the date of issuance. This conclusion is premature, however, because subsection 1 is susceptible to at least one alternative construction when it is read together with subsection 2 and other provisions of chapter 11 of title 21–A.

[¶ 49] Section 903–A(2) addresses the consequences when petitions are not filed within both deadlines—the constitutional deadlines and the statutory deadline of one year from the date of the issuance of the petition. The only consequence expressed in title 21–A for failing to satisfy the deadlines addressed in section 903–A(1) is that the petitions are rendered invalid for any further *circulation* if they fail to satisfy

either deadline. Subsection 2 does *not* provide that a failure to meet the statutory one-year deadline renders the petitions invalid for *filing* on or before the next-occurring constitutional deadline.

[¶ 50] Accordingly, subsection 1 and subsection 2, when read together, can be reasonably read so as not to invalidate for purposes of filing petitions circulated within section 903–A(1)'s one-year statutory deadline that are submitted to the Secretary of State after that deadline, but on or before the next occurring constitutional deadline.

[¶ 51] This alternative construction of section 903–A finds additional support in section 905 of the statute. Section 905 states that for the purposes of the Secretary's determination of the validity of the petitions, the operative "final" deadline for filing petitions is not the statutory one-year from issuance date, but rather the more flexible constitutional deadline:

> The Secretary of State shall determine the validity of the petition and issue a written decision stating the reasons for the decision within 30 days after the *final date for filing the petitions* in the Department of the Secretary of State under the Constitution of Maine, Article IV, Part Third, Section 17 or 18.

21–A M.R.S. § 905(1) (2005) (emphasis added). The "final date" to which section 905 refers is the constitutional deadline specified in section 18(1) that would have to occur on or after the last day of section 903–A(1)'s one-year statutory deadline.

[¶ 52] That the deadline for purposes of filing of petitions is not the one year from date of issuance statutory deadline in section 903–A(1) is further evidenced by the language of 21–A M.R.S. § 901(1) (2005). Captioned "Limitation on petitions," section 901(1) makes no mention of section 903–A(1)'s one-year deadline and provides,

without qualification, that "[a] direct initiative of legislation must meet the filing deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18."

[¶ 53] Read together, sections 901(1), 903–A(1) and (2), and 905 can be reasonably construed to reflect two deadlines, one statutory and one constitutional, with the "final" deadline being the constitutional deadline that occurs on or after the completion of the statutory deadline. It is that "final" deadline, located in section 18, and not the one-year statutory provision that triggers the Secretary's responsibility to determine the validity of the petition and issue a decision. *See* 21–A M.R.S. § 905(1).

[¶ 54] We are bound to construe statutes to avoid constitutional deficiencies. *See Irish v. Gimbel,* 1997 ME 50, ¶ 13, 691 A.2d 664, 671; *State v. Cropley,* 544 A.2d 302, 304 (Me.1988). We are also required to interpret statutes to be solicitous of the people's exercise of their sovereign power to legislate. *See Allen,* 459 A.2d at 1102–03. All of these provisions, when read together, as we are required to do to harmonize their provisions, *see Estate of Footer,* 2000 ME 69, ¶ 8, 749 A.2d 146, 148–49, lead to the conclusion that the operative final deadline for the *filing* of direct initiative legislation petitions is the deadline set out in section 18 of the Maine Constitution, a deadline with which Adams complied.

## II.

[¶ 55] Moreover, even if the one-year from issuance statutory deadline in section 903–A is read to apply to the filing of petitions, and not just to prohibit their further circulation, we are nevertheless still bound to construe the operative provisions, if we can do so reasonably, in a manner that upholds their constitutionality, *see Rideout,* 2000 ME 198, ¶ 14, 761 A.2d at 297–98, and facilitates the right of citizens to exercise their right to legislate by initiative, *see Allen,* 459 A.2d at 1102–03. In concluding that the Secretary of State had no discretion to accept any petitions filed beyond October 21, 2005, the Court concludes the word "must" in section 903–A(1) is mandatory, relying on rules of construction in 21–A M.R.S. § 7 and 1 M.R.S. § 71(9–A). I would rely on other applicable rules of construction and construe section 903–A(1) more liberally to support the exercise of the people's right to legislate and to uphold the statute's constitutionality. Thus I would construe the "must be completed within one year of the date of issuance" language of section 903–A(1) as being directory, and not mandatory, i.e., there is some discretion vested in the Secretary to determine whether there has been substantial compliance with the statutory deadline, and to validate those petitions submitted to the Secretary that are in substantial compliance. Substantial compliance with the one-year from the date of issuance deadline could occur if the underlying purposes of the statutory provisions have been satisfied. *See Costa v. Superior Court,* 37 Cal.4th 986, 39 Cal. Rptr.3d 470, 128 P.3d 675, 689–90 (2006); *see also Loonan v. Woodley,* 882 P.2d 1380, 1384 (Colo.1994).

[¶ 56] The application of a directory standard as opposed to a mandatory standard has been applied by the Justices of this Court:

[B]roadly speaking, requirements in a statute which are of the *very essence* of the thing to be done and the ignoring of which would practically *nullify the vital purpose* of the statute itself are regarded by the courts as mandatory and imperative; while those directions or details which are not of the essence of the thing to be done but which are prescribed with a view to the orderly conduct of the business, the omission of

which would not prejudice the rights of interested parties, are regarded as directory, so far as the consequences of such omissions are concerned, unless they are followed by words of positive prohibition.

*Opinion of the Justices,* 124 Me. 453, 468–69, 126 A. 354, 363 (1924) (emphasis added). If construed to apply as the deadline for the filing of petitions, the one-year period in section 903–A is not an end in itself, but is intended to require compliance with the constitutional requirement that the signatures on the petitions not be more than a year old, and to eliminate the possibility of fraud in the process. Construing "must" as directory, and not mandatory, and upholding the Secretary's determination that the petitions were submitted in substantial compliance with section 903–A in this case fulfills those purposes, facilitates the exercise of the right of the people to initiate legislation, and avoids an interpretation of the statute that is in conflict with the Constitution.

[¶ 57] This construction of section 903–A is also consistent with the various provisions of chapter 11 detailing the duties and powers of the Secretary of State in the initiative process. Although there is no express provision of 21–A M.R.S. §§ 901–906 (2005) granting the Secretary the authority to accept applications in substantial, but not technical, compliance with the statute, sections 901 through 906 are nevertheless replete with provisions that require the Secretary to exercise discretion in connection with the initiative process. Indeed, in enacting these provisions, the Legislature provided for the Secretary of State's inextricable involvement in almost every aspect of the legislation by initiative process from its inception to its completion. The Secretary designs the application to initiate proceedings for a direct initiative of legislation, 21–A M.R.S. § 901;

may witness the voter's signing of the application, 21–A M.R.S. § 901; reviews and determines the form of the petition to be submitted to the voters, 21–A M.R.S. § 901; and reviews the proposed law sought to be enacted, and has the discretion to reject or revise the proposed law, 21–A M.R.S. § 901(3–A). The Secretary then chooses whether to approve the form of the petition, 21–A M.R.S. § 901; drafts the ballot question, 21–A M.R.S. § 901(4); requests from the Revisor of Statutes a summary describing the content of the proposed law, 21–A M.R.S. § 901(5); decides whether to approve or amend the summary as is deemed appropriate, 21–A M.R.S. § 901(5); and prepares instructions specifying statutory and constitutional requirements, as well as the conditions in which signatures and/or petitions may be invalidated, 21–A M.R.S. § 903. Finally, the petitions are filed with the Secretary, and the Secretary then reviews the petitions, and is empowered to determine their validity and to issue a written decision to that effect. 21–A M.R.S. § 905(1). Thus, at every step of the initiative process, the Secretary is charged with making decisions. Such decision-making is the very essence of discretion. *See Me. Taxpayers Action Network v. Sec'y of State,* 2002 ME 64, ¶ 12 & n. 8, 795 A.2d 75, 79–80.

[¶ 58] This case presents unique and exceptional circumstances that lead to a reasonable conclusion that section 903–A has been substantially complied with. The petitions were all circulated within one year of their issuance; no signatures were more than one year old; there was no suggestion of any kind of fraud or attempts to manipulate the petition circulating process; the petitions filed on October 24 were not filed on October 21 because of inadvertence, and not because those filing the petitions intentionally disregarded the statutory deadlines; no petitions were cir-

culated and no signatures collected between October 21 and 24; and the petitions were filed early on the next business day following October 21. The Secretary's decision to accept those petitions was in keeping with the purposes of the statute—to ensure that petitions contain recent, not stale, signatures, and to eliminate fraud and manipulation of the petition process. The exercise by the Secretary of his discretion to accept the petitions filed on October 24, and to validate the petitions after a thorough examination for compliance with all of the statutory and constitutional requirements is consistent with the discretion vested in him throughout the provisions of the statute governing the citizen initiative process. That exercise is also consistent with the holding in *Opinion of the Justices,* in which the Justices concluded that a decision to hold the polls open an extra one-half hour did not invalidate an election because the statutory closing time for polling places was directory, and not mandatory. 124 Me. at 474, 126 A. at 365.

[¶ 59] The power of the citizens to legislate through the initiative process is a right of the utmost importance. Because section 903–A(1) relates to the initiative right to legislate vested in the citizens, any doubt as to its meaning "must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." *Allen,* 459 A.2d at 1102–03; *see also N.J. Democratic Party, Inc. v. Samson,* 175 N.J. 178, 814 A.2d 1028, 1033 (2002) ("Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise ...." (quotation marks omitted)). It was not unreasonable for the Secretary of State to consider the one-year from date of issuance filing date in section 903–A(1) to be directory, and not mandatory, and for him to conclude that he had the authority to determine if Adams had substantially complied with the statutory filing provisions.

[¶ 60] Further, the Secretary acted within his discretion when he determined that the petitions were valid. The petitions were circulated well within both the constitutional and statutory deadlines, and most were filed within both deadlines. Those not filed on October 21 were filed on the next business day. In the unique circumstances of this case, the Secretary acted with reason when he concluded there was substantial compliance by Adams with section 903–A.

[¶ 61] Accordingly, pursuant to either of two reasonable constructions of section 903–A, both upholding its constitutionality and facilitating the right of the citizens of Maine to participate in the process to initiate legislations, I concur in the Court's conclusion that this matter should be remanded to the Superior Court for entry of a judgment affirming the decision of the Secretary of State.

LEVY, J., concurring.

[¶ 62] I join in Part I of Justice Clifford's opinion because I conclude that the language of 21–A M.R.S. § 903–A(1) (2005) is ambiguous and, for the jurisprudential reasons he addresses, should be construed as embodying two deadlines, one statutory and the other constitutional. The failure to satisfy the statutory deadline associated with section 903–A(1)'s one-year circulation period subjects the petition to section 903–A(2)'s prohibition on circulation outside the one-year period, but the final deadline for filing the petition is the next occurring constitutional deadline in accordance with article IV, part third, section 18(1) of the Maine Constitution.

[¶ 63] With this construction of section 903–A, Adams's petition was timely because it was circulated within the statutori-

ly-defined one-year circulation period and it was filed on or before the next occurring constitutional deadline. I therefore conclude that the Secretary's decision should be affirmed, and that we need not reach the question of whether the "completed within one year of the date of issuance" language of section 903–A(1) is directory or mandatory.

[¶ 64] Turning to the constitutional issue, the Constitution does not intend the citizens' initiative process to be boundless. It authorizes the Legislature in article IV, part third, section 22 to establish "procedures for [the] determination of the validity of written petitions." Because the Legislature's adoption of reasonable procedures designed to ensure the validity of petitions is an explicit part of the constitutional scheme, the enactment of a defined circulation period is not inconsistent with that scheme if the period does not abridge the citizens' initiative right in any substantial way. The Court's interpretation of the Constitution as precluding a one-year circulation period should not prevent the Legislature from adopting a circulation period that is of sufficient length to assure that once the petition process is initiated, the citizens have the ability to control whether the petition will be considered by the next occurring first regular session or second regular session of the Legislature.