STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-08-49
_DHN - KEN - 7/14_

JOHN KNUTSON,

Petitioner

v.

DECISION AND ORDER

DEPARTMENT OF THE
SECRETARY OF STATE,
STATE OF MAINE

Respondent

HERBERT HOFFMAN,

Intervenor

Before the court is petitioner's M.R. Civ. P. 80B and 21-A M.R.S. § 356(2)(D)[1]

petition for judicial review of the Secretary of State's decision denying the petitioner's

challenge to the validity of Herbert Hoffman's nomination petitions to be placed on the

ballot for the U.S. Senate seat. Herbert Hoffman as an interested party has intervened.

The facts of the case are not in serious dispute. 21-A M.R.S. § 354(7)(A) requires

that the circulator of a nomination petition swear on oath before a notary public that,

"all of the signatures to the petition were made in the circulator's presence and that to

the best of the circulator's knowledge and belief each signature is the signature of the

[1] Provides:

A challenger or a candidate may appeal the decision of the Secretary of State by commencing an
action in the Superior Court. This action shall be conducted in accordance with the Maine Rules of Civil
Procedure, Rule 80B, except as modified by this section. This action must be commenced within 5 days of
the date of the decision of the Secretary of State and shall be tried, without a jury, within 10 days of the
date of the decision. Upon timely application, anyone may intervene in the action when the applicant
claims an interest relating to the subject matter of the petition, unless the applicant's interest is adequately
represented by existing parties. The court shall issue its written decision containing its findings of fact
and conclusions of law and setting forth the reasons for its decision within 20 days of the date of the
decision of the Secretary of State.

person whose name it purports to be." 21-A M.R.S.A. § 354(7)(A). The Maine Constitution, Art. 4, Pt. 3, § 20 requires a petition be "verified as to the authenticity of the signatures by the oath of the circulator that all of the signatures to the petition were made in his presence and that to the best of his knowledge and belief each signature is the signature of the person whose name it purports to be..." Mr. Hoffman, the circulator, swore this oath as to the three petitions here in question.

The petitioner, a resident and registered voter in the United States Senator's voting district, has challenged the validity of the petitions before the Secretary of State and subsequently, before this court. By her report, a hearing officer concluded and the Secretary of State through its decision adopted, the finding that in three instances involving Rep. Herb Adams, Dan Flack and John "Jack" Woods the signatures were not made in Mr. Hoffman's presence. The hearing officer and Secretary of State interpreted the phrase "in the presence of" to mean "close proximity coupled with awareness," citing Black's Law Dictionary. Further Mr. Hoffman testified that two other people, Jeff McNeely and Hoffman's daughter Kim Hoffman, had assisted him by circulating petitions while Mr. Hoffman had sworn the oath as the petitions' circulator.

The Secretary of State invalidated the signatures of these three individuals (amongst a number of others for reasons not germane to this action). However, in spite of the invalidation of these signatures, Mr. Hoffman still has more than the required 4,000 signatures. The petitioner now seeks this court to find the Secretary of State's decision not to invalidate the entire petitions error and seeks remand to the Secretary of State for invalidation of the three petitions on which the flawed signatures are found, thus functionally denying Mr. Hoffman the required 4,000 signatures and ballot access.

This case raises an issue of statutory interpretation by an administrative agency. Our primary purpose in statutory interpretation is to give effect to the intent of the Legislature. We do so first by reviewing

the plain language of the statute, and if the language is unambiguous, we interpret the statute according to its plain language. When a statute is ambiguous we defer to the interpretation of the agency charged with its administration, if the agency's interpretation is reasonable."

*Arsenault v. Secretary of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 287-288 (citations omitted).

The court accords that deference to the Secretary in his interpretation of the language in resolving any ambiguities created by the "in the presence of" language. This court finds the Secretary of State's conclusion that the three signatures were not made in the circulator's presence reasonable and without error. It is thus not material to further conclusions on the meaning of 21-A M.R.S. § 354 that the "in the presence of" language may or may not be ambiguous.

The parties are in general agreement that Mr. Hoffman, when swearing the oath, did not act fraudulently or have actual knowledge that he was falsely stating that the petitions had been signed in his presence, he simply was utilizing a different interpretation of the requirement than found by the respondent. This court's job thus is to determine whether the legislature intended in the absence of fraud or intentionally or knowingly false conduct, an entire petition to be invalidated if a single signature on the petition is demonstrated to be collected outside the presence of the circulator who swore the oath. Two provisions of that section are in question.

21-A M.R.S.§ 354(7)(A) provides:

The circulator of a nomination petition shall verify by oath or affirmation before a notary public or other person authorized by law to administer oaths or affirmations that all of the signatures to the petition were made in the circulator's presence and that to the best of the circulator's knowledge and belief each signature of the person whose name it purports to be; each signature authorized under section 153-A was made by the authorized signer in the presence and at the direction of the voter; and each person is a resident of the electoral division named in the petition.

21-A M.R.S. § 354(9) provides:

> A nomination petition which does not meet the requirements of this section is void. If a voter or circulator fails to comply with this section in signing or printing the voter's name and address, that voter's name may not be counted, but the petition is otherwise valid.

If this statutory scheme is ambiguous with relation to answering the question just posed, and the Secretary of State's interpretation is a reasonable one, we defer to his conclusion that he was not required to void the entire petitions. If it is unambiguous, the court looks to the plain language. *Maine Association of Health Plans v. Superintendent of Insurance*, 2007 ME 69, ¶ 34, 923 A.2d 918, 928. "A statute is ambiguous if it is reasonably susceptible of different interpretations. In other words, if a statute can reasonably be interpreted in more than one way and comport with the actual language of the statute, an ambiguity exists." *Id.* ¶ 35, 923 A.2d at 928.

The petitioner's interpretation reasonably comports with the actual language of the statute. He argues that because the Secretary of State has resolved that three signatures were not signed in the presence of Mr. Hoffman who swore an oath that they were, the oath is rendered incorrect. The oath is a requirement of § 354. A petition which does not meet § 354's requirements is void per § 354(9). He buttresses his interpretation by citation to the Law Court's opinions demonstrating the importance of the Oath in the citizen initiative process:

> ...it is evident that the circulator's role in a citizens' initiative is pivotal. Indeed, the integrity of the initiative and referendum process in many ways hinges on the trustworthiness and veracity of the circulator. In reviewing the signatures gathered by the circulators, the Secretary has the ability to verify through municipal records that a signing voter is actually registered and therefore permitted to vote...the circulator's oath is critical to the validation of a petition. Indeed, the oath is of such importance that the Constitution requires that it be sworn in the presence of a notary public...The failure to sign the oath in the presence of a notary public is therefore an error of constitutional import, and we have held that failure to be fatal to an entire petition.

*Maine Taxpayers Action Network v. Secretary of State*, 2002 ME 64, ¶ 13, 795 A.2d 75, 80. The Court added that "the oath is intended to assure that the circulator is impressed with the seriousness of his or her obligation to honesty..." *Id.* ¶ 14, 795 A.2d at 80. In fact the Court noted "the Legislature considers the circulator's swearing of the oath to be a sufficiently grave act that it has specifically criminalized the providing of a false statement in connection with the petition." *Id.* ¶ 17, 795 A.2d at 81.

The more difficult question for the court is whether the respondent's decision is supportable by an interpretation that also reasonably comports with the actual language of the statute. Starting again from the premise that three signatures were not in the presence of Hoffman, the circulator, the court concludes a reasonable interpretation of § 354(9) justifies invalidating these signatures but not voiding the entire petition on which each signature is located is possible.

21-A M.R.S.A. § 354(9) determines a petition is void if a requirement of § 354 with respect to that petition is not met. The circulator must swear an oath that all signatures on an individual petition were made in his/her presence. Thus, a reasonable interpretation is that an oath is required, however nothing is required as to the substantive correctness of that oath. In other words the requirement is that the circulator take an oath that all signatures on the petition were signed in his presence. The statute does not include an additional requirement that, in fact, every signature on the petition be signed in the circulator's presence. This comports with the limited Maine case law on the subject that the oath not have a basic defect. In *Maine Taxpayers Action Network*, the requirement was not met and the petition was void, because the person who swore the oath as the circulator was not who he purported to be. Thus, because the person who swore the oath was not the circulator, the oath was not sworn

by the circulator as required by § 354. In *Palesky v. Secretary of State*, because the oath was not taken in front of a notary public or authorized person, that basic § 354 requirement was not met. 1998 ME 103, ¶ 11, 711 A.2d 129, 132-133. An argument could be made against this interpretation that it would render the "in the presence of" language useless if it has no effect on the validity of the signatures. However, it could reasonably be argued that the Secretary of State gave meaning to that language by determining that while it is not a basic requirement of the oath provision, and thus does not trigger the § 354(9) voiding of the entire petition, it should nonetheless be complied with and those signatures shown not to be made "in the presence" of the circulator who swears the oath are not valid. This is a reasonable interpretation. The statute is therefore susceptible to more than one reasonable interpretation and is ambiguous.

Beyond the deference given to agencies interpreting statutes, this court is further compelled to resolve the ambiguity in favor of the Secretary of State's interpretation because of "[a] cardinal rule of statutory construction" that if the court "'can reasonably interpret a statute as satisfying...constitutional requirements [it] must read it in such a way, notwithstanding other possible unconstitutional interpretations of the same statute." *McGee v. Secretary of State*, 2006 ME 50, ¶ 44, 896 A.2d 933, 945 (Clifford, J. concurring). Therefore, if the above statutory provisions as applied to the factual circumstances in this case are "reasonably susceptible to more than one interpretation, one that is inconsistent with the provisions of the Maine Constitution and renders the statute constitutionally suspect, and another that is less restrictive and consistent with the Constitution, the latter interpretation should be used." *Id.* Therefore the court

ponders whether the interpretation forwarded by the petitioner, if correct, would run afoul of any constitutional rights.[2]

The Constitutional analysis must address the effect of the petitioner's legal position on the other valid signatures in the petitions in question. The United States Supreme Court has observed that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effects on voters." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)). The "primary concern is with the tendency of ballot access restrictions 'to limit the field of candidates from which voters might choose.'" *Id.* Thus, "it is essential to examine in a realistic light the extent and nature of their impact on voters." *Id.*

Such candidate eligibility requirements have an impact that "implicates basic constitutional rights." *Id.* "Voting is a fundamental right, it is at the heart of our democratic process, and any attempts to restrict that right should be carefully scrutinized." *Crafts v. Quinn*, 482 A.2d 825, 830. All things being equal:

> acceptance of the petition comports with the fundamental principle, grounded in the United States Constitution, that "no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."

*Melanson v. Secretary of State*, 2004 ME 127, ¶ 14, 861 A.2d 641, 645. Further, candidate eligibility requirements implicate basic constitutional rights. To wit, "the right of individuals to associate for the advancement of political beliefs, and the right of

---

[2] The court pursues this line of analysis because it clearly hovers in the background even though addressed lightly only by the intervenor and because of the result reached by the Law Court in *McGee*. There, this court was reversed not because its interpretation of the statute was incorrect, but because that interpretation (and according to the majority, the statute itself) conflicted with provisions of the Maine Constitution. This court's duty is to determine what the proper interpretation of the statute is as given from the legislature to the Secretary of State, however if an interpretation might infringe constitutional rights, this court must consider other reasonable interpretations that do not violate the constitution.

qualified voters, regardless of their political persuasion, to cast their votes effectively." *Celebrezze*, 460 U.S. at 787. "Both of these rights, of course, rank among our most precious freedoms." *Id.*

> Although these rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates. We have recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."

*Celebrezze*, 460 A.2d at 788 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). For instance, Maine's requirement that Mr. Hoffman acquire 4000 signatures for ballot access comports with the State's "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Id.* at 788, n. 9. However, "even when pursuing a legitimate interest" such as limiting ballot access to candidates with substantial support as here, "a State may not choose means that unnecessarily restrict constitutionally protected liberty." *Id.* at 806 (quoting *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972)). "'Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.'" *Id.* at 806 (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

Adjudicating the balance between Maine's legitimate election regulation prerogative and the fundamental rights implicated by such regulations is not easy for courts.

> Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmuspaper test" that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the *First* and *Fourteenth Amendments* that the plaintiff seeks to vindicate. It then must identify and

> evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. The results of this evaluation will not be automatic; as we have recognized there is no substitute for the hard judgments that must be made.

*Id.* at 789 (quotation marks and citations omitted). This court does not resolve the question whether the interpretation forwarded by the petitioner would indeed be unconstitutional. However it notes that because Mr. Hoffman without knowledge incorrectly interpreted the "in the presence of" language of the statute and therefore swore an oath that was incorrect as to three signatures, the petitioner asks this court to invalidate the presumptively legitimate signatures of 94 registered voters exercising their precious rights to have a voice in and associational right to a candidate on the ballot who is not of the two major political parties. *Celebrezze,* 470 A.2d at 787-88. Petitioner's interpretation while not necessarily unconstitutional, makes the statute, in this court's opinion, "constitutionally suspect." *McGee* ¶ 44, 896 A.2d at 945.

Weighing the interests of the State in preserving the integrity of the nomination by petition process against the potential Constitutional injury to the voting rights of the authors of the remaining signatures, the court concludes that the Secretary of State's interpretation as to the applicability of 21-A M.R.S. § 354(9) to the requirements of 21-A M.R.S. § 354(7)(A) in this case is a reasonable interpretation, especially in light of another possible interpretation, the petitioner's, which raises the specter of rendering the statutory scheme unconstitutional.

This court finds the decision of the Secretary of State not to be an abuse of discretion, contrary to law or based upon findings not supported by the evidence.

Accordingly, the entry is:

The decision and order of the Secretary of State is AFFIRMED.

Dated: July ___14___, 2008

Donald H. Marden
Justice, Superior Court

(AP-08-49)