1998 ME 103

Carol A. PALESKY

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 4, 1998.

Decided May 8, 1998.

Carol A. Palesky, Augusta, for plaintiff.

Andrew Ketterer, Attorney General, Thomas D. Warren, State Solicitor, Phyllis Gardiner, Asst. Atty. Gen., Augusta, for defendant.

Bruce Gerrity, Preti, Flaherty, Beliveau & Pachios, L.L.C., Augusta, for Maine Citizens for Responsible Government and others.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] Carol A. Palesky appeals from the entry of a judgment in the Superior Court (Kennebec County, *Mills, J.*) affirming a decision of the Secretary of State rejecting a direct initiative petition because it was not signed by the requisite number of electors. The Secretary of State invalidated a total of 20,786 signatures leaving the petition 6,369 signatures short of the 51,131 signatures (10% of votes cast in last gubernatorial election) required to place the initiative on a

statewide ballot. On appeal, Palesky argues that the Secretary of State erroneously invalidated 9,409 of those signatures and asks that the initiative be placed on the November 1998 ballot. By statute, we are required to decide this appeal within thirty days of the date of the decision of the Superior Court. 21–A M.R.S.A. § 905(3) (1993). Finding no error on the part of the Secretary of State, we affirm the judgment.

[¶ 2] The relevant facts may be briefly summarized as follows: In September of 1994, Palesky and the Maine Taxpayer Association Network (MTAN) applied for approval of a direct initiative petition entitled "An Act to Impose Limits on Real and Personal Property Taxes." The Secretary of State approved the form of their petition on October 14, 1994, and the proponents then had three years to circulate and gather the 51,131 signatures required to place the initiative on the ballot. *See* 21–A M.R.S.A. § 903–A(1) (Supp.1997).

[¶ 3] Proponents first submitted 53,000 signatures in January of 1996, but the Secretary of State rejected more than half of those signatures on the basis of apparent forgeries of the dates on individual signature lines and certifications. Palesky was convicted of aggravated forgery in August of 1997 as a result of her participation in gathering and submitting the signatures. The proponents continued to gather additional signatures, however, and within the three-year period submitted a total of 65,548 signatures beyond those invalidated in 1996. In January 1997, the Secretary of State again reviewed the petitions presented to him and invalidated a total of 15,719 signatures. He invalidated the signatures on the basis of defects apparent on the face of the petitions: altered petitions and certifications; defects in certifications; signatures more than one year old at time of certification; and incomplete circulator-verification forms. MTAN, Palesky and four other named individuals filed a complaint in the Superior Court seeking review of the Secretary of State's decision pursuant to 21–A M.R.S.A. § 905 (1993 & Supp.1997) [1] and M.R.Civ.P. 80C. Following the filing of the complaint and the submission of briefs by both sides, the Secretary of State obtained a remand to his agency, pursuant to M.R.Civ.P. 80C(e), to permit him to entertain the presentation of newly discovered evidence of fraud. After receiving additional

---

1. The statute provides:

**1. Secretary of State.** The Secretary of State shall review all petitions filed in the Department of the Secretary of State for a people's veto referendum under the Constitution of Maine, Article IV, Part Third, Section 17, or for a direct initiative under the Constitution of Maine, Article IV, Part Third, Section 18.
The Secretary of State shall determine the validity of the petition and issue a written decision stating the reasons for the decision within 30 days after the final date for filing the petitions in the Department of the Secretary of State under the Constitution of Maine, Article IV, Part Third, Section 17 or 18.
**2. Superior Court.** Any voter named in the application under section 901, or any person who has validly signed the petitions, if these petitions are determined to be invalid, or any other voter, if these petitions are determined to be valid, may appeal the decision of the Secretary of State by commencing an action in the Superior Court. This action shall be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section. In reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to his wishes. This action must be commenced within 5 days of the date of the decision of the Secretary of State and shall be tried, without a jury, within 15 days of the date of that decision. Upon timely application, anyone may intervene in this action when the applicant claims an interest relating to the subject matter of the petitions, unless the applicant's interest is adequately represented by existing parties. The court shall issue its written decision containing its findings of fact and stating the reasons for its decision within 30 days of the commencement of the trial or within 45 days of the date of the decision of the Secretary of State, if there is no trial.
**3. Supreme Judicial Court.** Any aggrieved party may appeal the decision of the Superior Court, on questions of law, by filing a notice of appeal within 3 days of that decision. The appellant must file the required number of copies of the record with the clerk within 3 days after filing notice of appeal. After a notice of appeal is filed, the parties have 10 days to file briefs with the clerk of courts. As soon as the record and briefs have been filed, the court shall immediately consider the case. The standard of review shall be the same as for the Superior Court. The court shall issue its decision within 30 days of the date of the decision of the Superior Court.

evidence in the form of affidavits and documents submitted by both the Attorney General and Palesky, the Secretary of State amended his decision and invalidated a total of 20,786 signatures. At this point, plaintiffs' counsel withdrew.

[¶ 4] When this complex matter came on for hearing, the Superior Court was confronted with the necessity of trying the matter within fifteen days of the Secretary of State's decision, with six unrepresented plaintiffs and a question of first impression concerning the nature of the review. Was the court to review the record of the action taken by the Secretary of State or to hold a full evidentiary trial? The court, over the objection of the Secretary of State, prudently chose to hold a trial, and received evidence on all issues. The court then considered the agency record, as well as the evidence presented at trial, and affirmed the decision of the Secretary of State. Plaintiff Palesky alone appeals from the court's ruling.

[¶ 5] We first hold that Palesky was not entitled to the full trial that she received. Section 905 provides that an appeal to the Superior Court "must be commenced within five days of the date of the decision of the Secretary of State and shall be tried without a jury, within fifteen days of the date of that decision." 21–A M.R.S.A. § 905(2) (1993). It further provides, however, that the appeal "shall be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section." *Id.* The provisions of section 905 that could be deemed "modifications" of Rule 80C relate to the expedited timing of the appeal. Accordingly, the procedural framework of the hearing is set forth in Rule 80C.

[¶ 6] The Legislature has in certain instances explicitly provided for the review of agency action with a full de novo trial in the Superior Court. For example, with respect to the appeal of the decision of the State Tax Assessor, pursuant to Rule 80C, the underlying statute provides in relevant part: "The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. It shall make its own determination as to all questions of fact or law." 36 M.R.S.A. § 151 (Supp.1997). We explained the legal significance of such explicit language in these terms:

> Following the 1991 amendment, the Superior Court no longer functions in an appellate capacity for the purpose of reviewing the decision of the Assessor. Rather, the court functions as the forum of origin for a determination of both facts and law. In that capacity it would be inappropriate for the court to defer to previous decisions of one of the litigants or to give deference to one of the litigant's interpretations of the law applicable to the facts as determined by the court or agreed to by the parties.

*Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928–29 (Me.1996). The language of section 905 falls far short of requiring a full de novo trial.

[¶ 7] The history of Rule 80C and its predecessor, Rule 80B,[2] demonstrates that when, as here, a statute calls for an administrative action to be "tried," the nature of the hearing is controlled by the procedure set forth in the rule. As the reporter's notes state, "these rules shall govern trial when the review provided by statute calls for a trial." M.R.Civ.P. 80B reporter's notes. In later notes, it is explained that Rule 80B(d) was added to include formal requirements to govern a party's ability to seek a trial on the facts:

> This amendment creates a new procedure for Rule 80B actions where a trial of the facts is appropriate.
>
> It requires that the party seeking to introduce new evidence justify his demand for a trial of the facts at a hearing before the court. This amendment requires that a party seeking to add facts to the existing record file a motion to do so. With the motion, the party shall be required to file an offer of proof.

---

**2.** Prior to the adoption of M.R.Civ.P. 80C, both governmental and agency actions were reviewed according to M.R.Civ.P. 80B: "Prior to the adoption of [80C], APA [Administrative Procedure Act] appeals as well as non-APA appeals were governed by Rule 80B ... and reference should be made to the Advisory Committee Notes to amended Rule 80B for discussion of the provisions of Rule 80C." M.R.Civ.P. 80C advisory committee's notes 1983 amend., Me.Rptr., 459–466 A.2d XLVII.

The court should then decide what evidence, if any, is appropriate to be heard in a trial on the facts. The court's action would, of course, be subject to any requirements of the statute or law under which the review is sought, *e.g.*, 5 M.R.S.A. § 11006 of the Administrative Procedure Act, which limits a court's ability to go outside the record in state agency reviews. M.R.Civ.P. 80B advisory committee's notes to 1981 amend., Me.Rptr., 428–433 A.2d LIV. Although this commentary is directed at Rule 80B(d), when Rule 80C was promulgated, the advisory committee noted that Rule 80C(e) provided the procedure for taking additional evidence when appropriate under 5 M.R.S.A. § 11006(1) and that Rule 80C(e) is basically the equivalent of 80B(d). M.R.Civ.P. 80C advisory committee's notes to 1983 amend., Me.Rptr., 459–466 A.2d XLVIII.

[¶ 8] In reviewing an appeal from a tax assessor in 1974, we held that when a statute allows an appeal to be "tried, heard and determined by the court without a jury . . . Rule 80B, M.R.Civ.P., supplies the procedural framework for review of all administrative action where, as here, the petitioner's right to such review is provided by statute." *Frank v. Assessors of Skowhegan,* 329 A.2d 167, 170 (Me.1974). The appeal in the present case is "tried" in the Superior Court, but the taking of evidence is controlled by Rule 80C(e) and the judicial review provisions of the Administrative Procedures Act.[3]

[¶ 9] Here, Palesky made no request for taking additional evidence, nor has she presented a transcript of the evidence received in the Superior Court as part of the record on this appeal. Although, in an exercise of caution, the court received evidence on all issues, on this record it was required to act only in an appellate capacity. Thus, we review the decision of the Secretary of State directly, *Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d 1304, 1305–1306 (Me.1996) (where Superior Court acts as an intermediate appellate court, this Court reviews the agency directly), reviewing for abuse of discretion, errors of law, or findings not supported by evidence. *Id.* (citing *Centamore v. Department of Human Servs.,* 664 A.2d 369, 370 (Me.1995)).

[¶ 10] Petitioner first challenges the Secretary's decision invalidating certain petitions for defects in the oaths taken by circulators. The Maine Constitution requires that a person circulating a petition for signatures must take an oath that "all the signatures to the petition were made in the presence of the circulator and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be. . . ." Me. Const. art. IV, pt. 3, § 20 (Supp.1997). The oath of the circulator "must be sworn in the presence of a person authorized by law to administer oaths." *Id.*

[¶ 11] The Secretary of State received affidavits from seven circulators stat-

---

3. 5 M.R.S.A. § 11006(1) (1993) provides as follows:

**1. Review.** Judicial review shall be confined to the record upon which the agency decision was based, except as otherwise provided by this section.

**A.** In the case of the failure or refusal of an agency to act or of alleged irregularities in procedure before the agency which are not adequately revealed in the record, evidence thereon may be taken and determination made by the reviewing court.

**B.** The reviewing court may order the taking of additional evidence before the agency if it finds that additional evidence, including evidence concerning alleged unconstitutional takings of property, is necessary to deciding the petition for review; or if application is made to the reviewing court for leave to present additional evidence, and it is shown that the additional evidence is material to the issues pre-

sented in the review, and could not have been presented or was erroneously disallowed in proceedings before the agency. After taking the additional evidence, the agency may modify its findings and decisions, and shall file with the court, to become part of the record for review, the additional evidence and any new findings or decision.

**C.** If a required hearing was not held before the review proceedings were initiated, the reviewing court shall remand to the agency for a hearing in accordance with subchapter IV.

**D.** In cases where an adjudicatory proceeding prior to final agency action was not required, and where effective judicial review is precluded by the absence of a reviewable administrative record, the court may either remand for such proceedings as are needed to prepare such a record or conduct a hearing de novo.

ing that they did not take an oath in the presence of Donna Hamilton, Palesky's daughter, the notary public whose name appears on their petitions, nor did they take an oath before any other authorized person. The affidavits fully support the invalidation of the petitions. *See Opinion of the Justices,* 116 Me. 557, 569, 103 A. 761, 767 (1917) ("The constitution itself prescribes these ... indispensable accompaniments of a valid petition, and a petition which lacks these requirements is invalid and cannot be counted"). Thus, the Secretary of State committed no error in this regard.

■ [¶ 12] Palesky next argues that the Secretary of State erred in invalidating 365 signatures because the signatures were not on the approved petition form.[4] The Maine Constitution art. IV, pt. 3, § 20 and 21–A M.R.S.A. § 901 (Supp.1997) require that petitions shall be furnished or approved by the Secretary of State. This requirement guarantees "clarity and allows for procedural uniformity through the requirement that a standard form be used or a petitioner-supplied form be approved by the Secretary. Compliance with this section imposes a justifiable minimal burden on a petitioner." *Wyman v. Secretary of State,* 625 A.2d 307, 311 (Me. 1993). The Secretary of State did not err in rejecting signatures on unapproved forms.

■ [¶ 13] Palesky next attempts to challenge the criteria which she suggests the local registrars used in declining to certify signatures on the petitions. The Maine Constitution requires that a petition must be "accompanied by the certificate of the official authorized by law to maintain the voting list of the city, town or plantation in which the petitioners reside that their names appear on the voting list of the city, town or plantation of the official as qualified to vote for Governor." Me. Const. art. IV, pt. 3, § 20 (Supp.

1997). The local registrar has the exclusive authority to maintain the voting list for each locality. 21–A M.R.S.A. §§ 121, 161 (1993 & Supp.1997). We have previously noted that if a petition does not contain the registrar's certification as required by the constitution, it "is not a petition within the meaning of [the Constitution]". *Opinion of the Justices,* 114 Me. 557, 567, 95 A. 869, 873 (1915); *see Opinion of the Justices,* 116 Me. 557, 569, 103 A. 761, 767 (1917). Nor can this defect be remedied after the deadline for submission to the Secretary of State. *Id.* Here, the Secretary of State correctly applied the constitutional requirement that petitions be accompanied by the certification of the local registrar and thus did not err in invalidating those lacking proper certification.[5]

■ [¶ 14] Finally, Palesky contends that the court was without authority to remand to the Secretary of State to allow the taking of additional evidence. Rule 80C(e) and the underlying statute allows the court to remand if:

> ... [A]pplication is made to the reviewing court for leave to present additional evidence, and it is shown that the additional evidence is material to the issues presented in the review, and could not have been presented or was erroneously disallowed in proceedings before the agency.

5 M.R.S.A. § 11006(1)(B) (1989). Here, the State moved to remand and made an offer of proof to the effect that it had obtained newly discovered evidence of fraud. The court did not err in remanding to the Secretary of State.

The entry is:

Judgment affirmed.

---

4. Petition nos. 3044, 3048, 3057, 3059, 3063, 3066, 3067, 3068, 4390 did not have the proposed legislation on the back of the petition and petition nos. 3022, 3023, 3024 had the proposed legislation stapled to the form.

5. Similarly, the Constitution requires that "[t]he date each signature was made shall be written next to the signature on the petition, and no signature older than one year from the written date on the petition shall be valid." Me. Const.,

art. IV, pt. 3, § 18(2) (Supp.1997). These constitutional requirements are not mere technicalities. Palesky's argument that "circulators may fill in or correct in any block on a petition except signature which they did [and] ... [R]egistered voters may correct anything on petitions in they made an error such as date [sic]" is without merit. The Secretary of State committed no error in strictly applying the constitutional requirements for placing a petition on the ballot.