STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CIVIL ACTION
                                        DOCKET NO. AP-09-56
                                        DHM -KEN- 12/23/2009


CHARLES L. JOHNSON III,

        Petitioner

    v.                                  **DECISION**

MATTHEW DUNLAP,
SECRETARY OF STATE,

        Respondent

    and

CHARLES WEBSTER

        Intervenor

Before the court is the petition for review of final agency action of Charles L. Johnson, III pursuant to M.R. Civ. P. 80C, 5 M.R.S.A. §11001 and 21-A M.R.S.A. §905(2).

This dispute arises from the submission and review of petitions intended to trigger a People's Veto referendum of "An Act to Implement Tax Relief and Tax Reform," P.L. 2009, ch. 382 (effective 1/1/10) (*hereinafter* the "Tax Reform Act") signed into law by Governor John Baldacci on 7/12/09.

Following the signing of the Tax Reform Act by Governor Baldacci, Intervenor Charles Webster began circulating petitions to trigger a People's Veto referendum pursuant to the Maine Constitution and the laws of the State of Maine. Me. Const. Art. IV, pt. 3, § 17; 21-A M.R.S.A. § 905. Within 90 days of the legislature's adjournment, Webster was required to submit at least 55,087 signatures, constituting ten percent of the total number who voted in the last

1

gubernatorial election. Me. Const. Art. IV, pt. 3, § 17(1). On 9/11/09, Webster submitted completed petitions containing approximately 71,035 signatures. The Secretary stayed the effective date of the Tax Reform Act pending a determination of the validity of the petitions.

When the People's Veto petition was filed with the Secretary of State, the Secretary had 30 days to determine the validity of the petitions. 21-A M.R.S.A. § 905(1). Accordingly, the deadline to issue a decision was 10/13/09. The Secretary failed to issue a decision by that date. On 11/2/09, Webster filed a petition for review of agency action including an independent claim for declaratory relief in the companion case, *Webster v. Dunlap*, AP-09-55.

On 11/9/09, the Secretary issued a Determination of the Validity of the Petition for People's Veto of Legislation, invalidating 14,928 signatures for various reasons, but finding Webster had submitted 56,107 valid signatures. On 11/17/09, Petitioner[1] Charles Johnson filed his Petition for Review of Final Agency Action alleging the Secretary failed to invalidate at least 1,021 signatures that were in some way deficient.

Petitioner assigns five areas of error by the Secretary of State. Petitioner's specific arguments include that (1) petitions containing 4480 signatures are invalid because the oaths of circulator's were administered by Stavros Mendros, a notary public who petitioner alleges is a "self interested notary" due to payments received by his company for organization of signature gathering services; (2) petitions containing 3837 signatures are invalid because Cynthia

---

[1]   Petitioner is a registered voter in Town of Hallowell. 21-A M.R.S.A. § 905(2) permits any voter to appeal a decision by the Secretary validating a petition.

Mendros[2] f/k/a Cynthia Bodeen signed the attestation that she administered the circulators' oaths on the petitions as "Cynthia Bodeen" when her legal name was in fact "Cynthia Mendros;" (3) 315 signatures are invalid because the signatories do not appear on the Central Voter Registry (CVR), which petitioner contends is the authoritative database to determine whether a person is a registered voter; (4) signatures are invalid because the Secretary relied on the certifications of town registrar's that the signatories were registered voters and did not conduct his own independent investigation; and (5) 1042 signatures are invalid due to factual issues presented on the face of the petitions, including incorrect dates, illegible signatures, duplicate signatures, and clerical errors. In total, accounting for signatures that fall into more than one category, petitioner has challenged that 9674 signatures are invalid.

On 12/21/09, this court entered a decision in the *Webster* case, holding that the Secretary had lost his authority to act by failing to complete his review within the thirty-day period proscribed in 5 M.R.S.A. § 905. The holding in *Webster* necessarily means that any error the Secretary's substantive review in this case is moot. However, in the event that the *Webster* decision is not sustainable on appeal and due to constrained deadlines for judicial review in this case, the court addresses the merits of petitioner's claims.

In conducting a judicial review of the evidence presented by the record and additional evidence, the court is guided by two important principles established in Maine law. The power in the agency "to reject names and names falsely certified may tend to prevent fraud and to protect the referendum from

---

[2] Cynthia Mendros and Stavros Mendros are married. Accordingly, petitioner argues that if the court invalidates petitions due to Stavros Mendros' financial interests, petitions containing an attestation by Cynthia Mendros should be similarly invalidated.

3

disrepute." *Opinion of the Justices*, 116 Me. 557, 103 A. 761, 772 (1917). On the other hand, in the context of the direct initiative, the Maine Constitution "cannot be said merely to *permit* the direct initiative of legislation upon certain conditions. Rather, it reserves to the people the *right* to legislate by direct initiative if the constitutional conditions are satisfied." *McGee v. Secretary of State*, 2006 ME 50, ¶ 25; 896 A.2d 933, 941. Certainly the Constitution creates the *right* in the people to veto legislation under certain conditions. Accordingly, this court is constrained to require a constitutional, statutory, regulatory or common law basis to overturn a decision of the respondent in accordance with the Administrative Procedures Act.

Subsequent to the filing of his petition, discovery procedures revealed that two individual notary publics taking the oaths of circulators on petitions containing 8,550 signatures had a financial interest in the outcome of the petition campaign by contract with the sponsor of the referendum. This allegation was not presented to the Secretary of State and is not a part of his validation process. The issue, therefore, is whether, as a matter of law, those documents containing the acknowledgement of those notaries must be disallowed and the signatures thereon not validated to meet the veto referendum requirement. Petitioner relies on public policy and a publication of the Secretary called the Notary Public Handbook and Resource Guide. The document states that a notary public must not act in any official capacity if there is any interest that may affect impartiality. The statement relies upon the general "conflict of interest" principle and refers to a "beneficial interest" rule. This provision of the Handbook does not rely on any

4

statute or regulation nor does it provide the basis for invalidating elector's signatures under the circumstances. [3]

Petitioner further challenges the notary's authority to take the oath of the circulator on a petition wherein the notary has signed as a registered voter. To this deficiency, the Secretary responds that the Constitution spells out very clearly the role of the notary in the referendum petition process, to administer an oath to a circulator who swears that the signatures on the petition are original, made in the presence of the circulator and that to the circulator's best knowledge and belief, each signature is that of the person whose name it purports to be. Me. Const. Art. IV, pt. 3, § 20.

Whatever concerns may be appropriate regarding the public interest in the enforcement of a rule of "conflict of interest" or "beneficial interest," the court has not been presented with any substantive law to cause it to invalidate the signatures on petitions acknowledged under such circumstances.

Likewise, the petitioner has challenged the signatures on petitions on which the notary public has taken the oath of a circulator by signing her previous name and not her married name existing at the time of the acknowledgement. It is clear from the record that a notary public involved in a substantial number of petitions applied for, was granted and is registered with the Secretary under her name at the time of the application. However, without notification to the Secretary, she married and assumed the surname of her husband prior to this petition campaign. By administrative rule, a notary public must notify the

---

[3]   The court is advised by the Assistant Attorney General at oral argument that a Maine statute prohibiting the payment of circulators on the basis of number of signatures was struck down by the Federal District Court on Constitutional grounds. *See On Our Terms '97 Pac v. Secretary of Me.,* 101 F. Supp.2d 19 (D. Me. 1999).

Secretary of a change of address, email address, name or other contact information within 10 days of the change. 29-250 CMR Ch. 700. This, also, appears in the Handbook. However, there is no indication that such a filing is a condition that must be met in order for the notary to perform her duties with authority as long as she does not use the name of another and the name used is consistent with that registered with the Secretary. *See Maine Taxpayer's Action Network v. Sec'y of State*, 2002 ME 64, 795 A.2d 75. Further, there does not appear to be any authority for the proposition that use of the registered name rather than the new married name invalidates the function performed on the referendum petitions.

Petitioner's third argument is that the signatures of persons who do not appear on the Central Voter Registry are invalid. *See* 21-A M.R.S.A. § 902 (providing that verification of people's veto must be conducted in the same manner as nonparty nomination petitions); 21-A M.R.S.A. § 354(7)(C)(providing that, for nomination petitions, the registrar "shall certify which names on a petition appear in the central voter registration system as registered voters in that municipality and may not certify any names that do not satisfy subsection 3[4]"). An examination of the language of the statute reveals the deficiency with petitioner's argument. Section 354 requires that the registrar shall *certify* names that are found on the CVR. The statute does not provide that the registrar is required to *invalidate* names due to their absence on the CVR. To the extent that an argument could be made that the negative implication of Section 354 is that the CVR is the exclusive authority to consult in determining whether a name could be certified, the sentence of Section 354 providing that the registrar may

---

[4] Subsection 3 requires that the voter must personally sign the petition.

not certify names under certain conditions reveals that the Legislature did not intend such an implication.

Petitioner's fourth argument is that the Secretary is under an independent duty to review signatures under section 905, notwithstanding valid certificates from the municipal registrars that the names on the petitions are of persons qualified to vote in the municipality. Presumably, this review would require the Secretary to consult the CVR, as the CVR is the voter list within the Secretary's custody. This argument presents two problems, one resulting from the text of section 905 and another from the constitution. Section 905 requires the Secretary to review the "petitions," not the individual signatures. Accordingly, it would be difficult to read section 905 as imposing a mandatory duty to inspect each individual signature rather than relying on the certificate by the municipal registrar that the names are those of persons qualified to vote.[5] With regard to the Constitutional issue, Section 20 of Article IV, part third of the Maine Constitution defines "electors" as the persons of the State qualified to vote for Governor. The certification of the registrar that the names "appear on the voting list of the city, town, or plantation of the official as qualified to vote for Governor" constitutes prima facie evidence that the signatories to the petitions are registered voters. Me. Const. Art. IV, pt. 3, § 20; *Opinion of the Justices*, 116 Me. 557, 571, 103 A. 761, 768 (1917). Additionally, 21 M.R.S.A. § 121 provides that the registrar has the "exclusive power" to determine whether a person is a registered voter, and being listed on the CVR is not considered a prerequisite to

---

[5] This does not imply that the Secretary lacks the power to review individual signatures for duplicates, forgery, and other issues. Rather, it means that relying on the certificates of municipal registrars, who have the "exclusive power" under 21-A M.R.S.A. § 121 to determine whether a person is a registered voter is not error.

7

voting for Governor under Title 21-A. *See also Palesky v. Sec'y of State*, 1998 ME 103, ¶ 13, 711 A.2d 129, 133 (acknowledging the registrar's exclusive authority to maintain the municipal voting list). Accordingly, if the Secretary had the authority to invalidate a person's signature because his or her name is not listed on the CVR, that authority would infringe upon the right any person "qualified to vote for Governor," who is absent from the CVR for one reason or another, to sign a people's veto petition. Me. Const. Art. IV, pt. 3, § 20.

The remaining challenges by petitioner relate to particular factual allegations regarding specific signatures. The Secretary has explained the activities undertaken by him and his staff to address the alleged deficiencies but the explanations take the form of arguments in the briefing material and the statute providing for judicial review is specific regarding the correction of the record and the taking of additional evidence. The respondent has not requested the taking of evidence on these issues. Under the circumstance, the court would normally remand the matters to the Secretary to prepare findings for the court's review. However, inasmuch as the present situation is more than 100 days from the filing with the Secretary and the Constitution anticipates the final review by the appellate court within that period, the court does not seem to have such a luxury. Relying on the record, as corrected, the court considers the petitioner's challenges.

The parties agree that there are an additional 62 signatures that may be considered duplicates notwithstanding the agency review and the court will disallow same.

The petitioner asserts that an additional three signatures are illegible and must be disallowed. He premises the claim on his argument that the Secretary

8

has the statutory authority to make the final determination of each signature, a premise to which this court disagrees as held above. The court is satisfied that the Secretary has the authority to rely on the local registrar who has examined the writing and the printed name and has certified the voter. As stated in the procedure required by the Secretary in his People's Veto Petition Certification Instructions, ("Instructions") found in the record, " . . . if you believe the voter has signed the petition, you may accept it. We want to give the benefit of the doubt to the voter who signed the petition."

The petitioner challenges over 500 signatures he claims were written after various petitions were notarized. Based on date issues, he asserts that the signatures were either dated after the notary took the circulator's oath, the signature was not dated or the signature was dated outside of the circulation period. He challenges the acceptability of the Secretary in making an assumption that undated signatures, or signatures with unlikely dates are not in compliance with the Constitution. To some degree, he, again, relies on his position that the Secretary has an independent duty not to rely on the notarized oath of the circulator. The Instructions provide that the signatures must be determined to have been entered during the circulation dates between June 30, 2009 and September 8, 2009. It requires a signature to be discounted only if the reviewer "cannot determine what the date of signing was." This allows the consideration of factors such as obvious mistakes in a date and other dates appearing on the petition. The respondent accepts the challenge as to 66 signatures but denies a factual basis for the others. The court is satisfied that the agency exercised acceptable judgment in this circumstance.

9

Me. Const. Art. IV, pt. 3, § 20 requires that petitions "must be submitted to the appropriate officials of cities, towns or plantations, or state election officials as authorized by law, for determination of whether the petitioners are qualified voters by the hour of 5:00 p.m. on the fifth day before the petition must be filed in the office of the Secretary of State,. . ." Presumably this important provision is to assure the registrars receive the petitions before the close of business and have sufficient time to certify the signatures. Mr. Johnson alleges that 117 signatures were on petitions submitted to the town clerks after the Constitutional deadline. The Secretary agrees as to 54 signatures. However, he argues that in spite of being encouraged to do so, not all town clerks have and use date stamps. In his brief, the Secretary asserts that he is in possession of evidence to establish receipt by the officials in due time. The record is not clear as to the complaint and the court makes no findings except to accept the allegation.

Three signatures are challenged because the date of notarization is indicated as September 27, 2009. The response is that the other signatures are dated in the vicinity of August 27th and on September 27, 2009, the petition was already in the possession of the Secretary. This is an obvious error and recognized as such by the Secretary within his discretion.

The petitioner challenges 1,597 signatures because the signature of the notary is illegible. This happens to be the notary whose name change has occasioned the challenge previously discussed. As is recognized by the court in the case of the registrars familiar with a number of characteristics of the registered voter, the Secretary has sufficient documentation and familiarity with this notary public's signature to remove doubt as to authenticity. Examples of such documentation exist in the record.

10

With the exception of the findings of this court in *Webster v. Dunlap*, AP 09-55 (Ken. Cty. Sup. Ct., Dec. 21, 2009), as to the date of the Secretary's determination, the court is satisfied that the agency decision of the Secretary of State in this matter is founded upon constitutional and statutory provisions, not in excess of such authorities, followed lawful procedure, was not affected by bias or error of law, is supported by substantial evidence, (with the minor exceptions as noted) and is not arbitrary or capricious or characterized by abuse of discretion.

Accordingly, the entry will be:

> The Determination of the Validity of a Petition for People's Veto of Legislation Entitled: "An Act To Implement Tax Relief and Tax Reform" dated November 9, 2009 by the Office of the Secretary of State is AFFIRMED.

December 23, 2009

JUSTICE, SUPERIOR COURT

Date Filed __11/17/09__ __Kennebec__ Docket No. _____AP-09-56_____
County

Action ___Petition For Review___
80C

Daniel Billings, Esq. (Intervenor)
44 Elm Street
PO Box 708
Waterville, Maine 04901-0708

Charles L. Johnson, III          vs.          Secretary of State

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John M.R. Paterson, Esq.<br>PO Box 9729<br>Portland, ME  04104-5029 | Phyllis Gardiner, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

| Date of Entry | |
|---|---|
| 11/18/09 | Petition For Review of Final Agency Action, filed 11/17/09.  Motion To Take Additional Evidence, filed 11/17/09, w/ Statement Of Additional Facts Requested To Be Presented To The Court.  s/Paterson, Esq. |
| 11/20/09 | Letter entering appearance, filed.  s/Gardiner, AAG |
| | Hearing scheduled for 11/23/09 at 9:00 a.m. Called attys. of record.<br>Motion of Charles Webster to Interven, filed. s/Billings, Esq.<br>Proposed Order, filed.<br>Charles Webster's Motion to Consolidate, filed. s/Billings, Esq.<br>Proposed Order, filed. |
| 11/30/09 | SCHEDULING ORDER, Marden, J. (11/25/09)<br>Copies to attys. of record. |
| ------- | Certification of Record, filed.<br>Affidavit of Julie L.Flynn, Deputy Secretary of State, filed. s/Flynn |
| 12/7/09 | Motion for Modification of Record Under M.R.CIV.P. 80C(f)(or in the Alternative Motion to Take Additional Evidence Under M.R.CIV.P 80C(e)), filed. s/Paterson, Esq.<br>Joint Stipulation, filed. s/Paterson, Esq. |
| 12/9/09 | Inclusion in the Agency Record, filed. s/Gardiner, AAG |
| 12/14/09 | Petitioner's Motion for Extension of Time to File Compliation of Supportin Documents from the Record, filed. s/Paterson, Esq.<br>Petitioner's Brief, filed. s/Paterson, Esq. (attachments in the vault) |
| 12/16/09 | Motion for Leave to File Amended Brief and Take and Present Additional Evidence, filed. s/Paterson, Esq.<br>Motion for Oral Argument, filed. s/Paterson, Esq.<br>Proposed Order, filed. |
| 12/16/09 | Respondent's memorandum in Response to Petitioner's Motion to Modify Record, filed. s/Gardiner, AAG |

| Date of Entry | Docket No. _____ |
|---|---|

Notice of setting for _12/21/09_
22

sent to attorneys of record.

**12/17/09** Supplement to Petitioner's First Amended Brief in Support of Petition for Review, filed. s/Paterson, Esq.

Supplemental binder with attachments, filed. s/Paterson, Esq.

**12/18/09** Respondent's Motion for Enlargement of Time to File 80C Brief, filed. s/Gardiner, AAG

Response to Motion for Modification of the Record.

**--------** ORDER, Marden, J.
GRANTED
Copies to attys. of record.

**12/21/09** Intervenor's 80C Brief, filed. Billings, Esq.

**--------** Respondent's Brief, filed. s/Gardiner, AAG

**12/21/09** Intervenor's Memorandum of Law in Opposition to Petitioner's Motion for Leave to File Amended Brief & Take and Present Additional Evidence. s/Billings, Esq.
Joint Stipulation, filed. s/Paterson, Esq.

**12/21/09** Respondent's Motion to Correct Agency Record, filed. s/Gardiner, AAG
Corrected Index to Agency Record.

**12/22/09** Petitioner's Motion to Strike Portions of Respondent's Brief, filed. s/Paterson, Esq.
Proposed Order, filed.
Petitioner's Rule 80C Reply Brief, filed. s/Paterson, Esq. (attachments A,B,C)

**--------** Hearing held with the Hon. Justice Donald Marden, presiding.
John Paterson, Esq. for the Petitioner, Phyllis Gardiner, AAG for the Respondent, and Daniel Billings,Esq. Intervenor.
Oral arguments made to the court.
Mtn. to Take Additional Evidence is withdrawn
Mtn. to Amend Brief/Mtn. to Take Additional Evidence is Granted.
Stipulation of Parties to Change Name is Granted.
Petitioner calls S. Mendros as a witness.
Court to take matter under advisement. Court to issue order.

**12/23/09** DECISION: Accordingly, the entry will be: the determination of the petition for People's Veto of Legislation Entitled: "An Act To Implement Tax Relief and Tax Reform" dated November 9, 2009 by the Office of the Secretary of State is AFFIRMED.
Order dated 12/23/09. /s/ Justice Marden. Copy of order to Atty Paterson, AAG Gardiner and Atty Billings.

**12/28/09** Transcript, filed. s/Tammy Drouin, CR

**--------** Copy of Decision mailed to repositories