STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                          CIVIL ACTION
                                         DOCKET NO. AP 20-0016


DAVID A. JONES *et. al.,*
Petitioner

v.                                       ORDER

SECRETARY OF STATE,
Respondent

and

COMMITTEE FOR RANKED
CHOICE VOTING, *et. al.*
Intervenors

REC'D CUMB CLERKS OFC
AUG 24 '20 PM4:43


## OVERVIEW

Backers of a petition (Petitioners) seek to place a "peoples' veto" referendum on the ballot that would repeal legislation submitting presidential elections in Maine to ranked choice voting. The Petitioners appeal the Secretary of State's ("Secretary") decision that there were an insufficient number of valid signatures to place the issue on the November 2020 ballot. The Secretary opposes the appeal. The Committee for Ranked Choice Voting and others ("Committee"), all proponents of ranked choice voting, intervened and oppose the appeal as well. Neither the legality nor the desirability of ranked choice voting is at issue in this appeal. The issue here is whether the Secretary improperly invalidated or validated petitions and individual signatures seeking to place the issue on the ballot. Upon review of the facts and law governing this case, and in light of the Secretary's Amended and Supplemental Determinations, this court finds that the Secretary improperly invalidated the signatures collected by Monica Paul and Michelle

1

Riordan. As such, the court finds that the Petitioners collected enough signatures to place their petition on the November 2020 ballot and hereby reverses the Secretary's decision.

## FACTS

The Petitioners are supporters of a petition that seeks to place on the November ballot a "people's veto" of Pub Laws 2019, CH. 5389 known as "An Act to Implement Ranked Choice Voting for Presidential Primary and General Elections in Maine" ("Act"). The Secretary approved the timely application for a people's veto referendum petition. *Payne v. Sec'y of State*, 2020 ME 110, ___ A.3d ___.

The proponents of the people's veto set out to collect the 63,067 signatures necessary to put the veto on the ballot. On June 15, 2020, the proponents filed a number of petitions with the Secretary that contained a total of 72,512 signatures; at which time the Secretary began the process to determine whether the petitions and the signatures complied with the Maine Constitution and Maine law. On July 15, the Secretary issued his Determination of the Validity of a Petition for People's Veto of (the Act) ("Determination"). The Secretary invalidated 11,178 signatures, leaving the petition with only 61,334 signatures and short of the required number of signatures.

The Petitioners brought a timely appeal raising a variety of issues challenging the Secretary's Determination. The Committee intervened. After a conference with counsel on August 3, the court remanded the matter to the Secretary without objection. On remand, the Secretary was to reconsider its invalidations in light of the additional evidence provided by both the Petitioners and the Committee. The Secretary issued an Amended Declaration on August 12. The Secretary invalidated 11,299 signatures, leaving a shortfall of 1,775 signatures. Amended Declaration, pp. 8-9.

Because the court must decide the issue by August 24, the parties agreed to an accelerated briefing schedule. On Friday, August 21, the court held a status conference

2

with counsel. The court, with the agreement of the Secretary and the Petitioners, but over the objection of the Committee, remanded this case back to the Secretary for further findings with respect to the petitions from the Town of Turner and allowed supplemental briefs to be filed on August 24.

The Petitioner's original challenge focuses on several categories of ballots that the Secretary determined to be invalid in an effort to overcome the shortfall.

| | | |
|---|---|---|
| 1. | Town of Turner | 809 signatures |
| 2. | Circulators Riordan and Paul | 988 signatures[1] |
| 3. | Town of Freeport | 160 signatures |
| 4. | Notary Pettengill | 24 signatures |
| 5. | Materially altered signatures | 12 signatures |
| | | 1993 signatures |

On August 24, the Secretary issued a Supplement to its Amended Determination ("Supplement"). This Supplement reinstated 809 signatures that were previously invalidated. There are now 10,490 invalidated signatures, a shortfall of 966 signatures.

Altogether, the Petitioner now challenges enough qualifications to get over the 966-signature gap. In addition, the Intervenor objects to the validation of the 809 signatures from the Town of Turner.

## ANALYSIS

When the Superior Court hears an appeal of a decision by a state agency, the court may:

A. Affirm the decision of the agency;

---

[1] The Secretary noted in a supplemental memorandum that the Secretary invalidated 306 signatures on the Monica Paul petition, not 262 as previously calculated.

**B.** Remand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary; or

**C.** Reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:

> **1)** In violation of constitutional or statutory provisions;
> **2)** In excess of the statutory authority of the agency;
> **3)** Made upon unlawful procedure;
> **4)** Affected by bias or error of law;
> **5)** Unsupported by substantial evidence on the whole record; or
> **6)** Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007. The court reviews the evidence for findings not supported by the evidence, errors of law, or abuse of discretion. *Knutson v. Dep't of Sec'y of State*, 2008 ME 124, ¶8, 954 A.2d 1054.

"The Secretary of State is the constitutional officer entrusted with administering— and having expertise in—the laws pertaining to the direct initiative process." *Reed v. Sec'y of State*, 2020 ME 57, ¶ 18, ___ A.3d ___. The court must defer to the Secretary's interpretation of the relevant law as long as it is reasonable. *Id.* The court can only reverse the Secretary on the grounds of abuse of discretion if the Secretary "exceeded the bounds of the reasonable choices available to him." *Forest Ecology Network v. LURC*, 2012 ME 36, ¶ 28, 39 A.3d 74. With respect to the Secretary's findings of fact, the court must examine:

> "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did. [The reviewing court] must affirm findings of fact if they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency. The 'substantial evidence' standard does not involve any weighing of the merits of evidence. Instead it requires [the court] to determine whether there is any competent evidence in the record to support a finding. Administrative agency findings of fact will be vacated only if there is no competent evidence in the record to support a decision. Any [c]ourt review that would redecide the weight and significance given the evidence by the administrative agency would lead to ad hoc judicial

4

> decision-making, without giving due regard to the agency's expertise, and would exceed [the court's] statutory authority."

*Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶¶ 13-14, 989 A.2d 1128(internal citations omitted). When an agency concludes that the party with the burden of proof failed to meet that burden, the reviewing court will reverse that conclusion only if the record compels a contrary conclusion to the exclusion of any other inference. *Kelley v. Me. Pub. Employees. Ret. Sys.*, 2009 ME 27, ¶16, 967 A.2d 676; *see also Concerned Citizens to Save Roxbury v. Bd. Of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263. On appeal, it is the Petitioner's burden to show that there is insufficient evidence for the Secretary to make its determination. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114.

The right to the "people's veto" is provided by the Maine Constitution. ME Const., Art. IV, Part 3d, § 17. The Constitution provides that a proponent of the referendum must obtain the signatures of ten percent of the number voting in the last gubernatorial election. *Id.* The Maine Constitution also imposes requirements on the conduct of a petition drive that are designed to maintain the integrity of the process. *Id.* §20. These limits govern those who circulate the petitions, known as "circulators," the notaries who take the circulator's oath upon completion of the petitions, and the municipal officials who certify the petitions. *Id.* Once this process is completed, the petitions are then sent to the Secretary so that he may determine if they are valid.

Relevant to this case, the Constitution requires that petitions be deposited with the town officials "by the hour of 5:00 p.m., on the 5th day before the petition must be filed in the office of the Secretary of State, or, if such 5th day is a Saturday, a Sunday or a legal holiday, by 5:00 p.m., on the next day which is not a Saturday, a Sunday or a legal holiday." *Id.* § 20. In this case, the petitions needed to be submitted by 5 P.M. on June

5

10. The Maine Constitution also requires that a "Circulator must appear on the voting list of the city, town or plantation of the circulator's residence as qualified to vote for Governor. . ." *Id.*

In addition to the Constitution, the Legislature has issued a set of statutory guidelines that overly the constitutional framework outlined above. Again, relevant to this case, the statute states that a notary must take the circulator's oath and sign the petition. 21-A M.R.S. § 902. "*After* the petition is signed and verified in this manner. the petition must be submitted to the registrar for certification." *Id.*(emphasis supplied). In addition, any notary providing the circulator's oath must not have a conflict of interest. A conflict of interest would include "providing any other services, regardless of compensation, to initiate the direct initiative or people's veto referendum .... or ...providing services other than notarial acts, regardless of compensation, to promote the direct initiative or people's veto referendum for which the petition is being circulated." 21-A M.R.S.A. § 903-E.

A failure to comply with the rules on the part of a circulator or notary can lead to disqualification of an entire petition. *Maine Taxpayer's Action Network* v. *Sec'y of State,* 2002 ME 64, ¶ 13, 795 A.2d 75, 80. Although there are not enough decisions from the Law Court arising from the initiative and peoples veto process to fully flesh out the contours of the Secretary's discretion when validating or disqualifying petitions or signatures, there are a few decisions that shed some light. In *Reed v. Secretary of State,* the Secretary validated a sufficient number of signatures to allow an initiative regarding the CMP power line to go forward. *Reed,* 2020 ME 24, ¶ 10, ___ A.3d ___. The Law Court deferred to the Secretary's decision to distinguish between those petitions where the oath was administered when the notary did not have a conflict and those when it did have a conflict. *Reed,* 2020 ME 57, ¶¶ 20-22, ___ A.3d ___. In *Maine Taxpayer's Action Network,*

6

the Law Court upheld the Secretary's decision to invalidate the petitions on the grounds that the circulator was not a resident of Maine and that he falsely stated his identity. *Me. Tapayers Action Network*, 2002 ME 64, ¶ 6, 795 A.2d 75. In *McGee v. Secretary of State*, the Law Court found that the Secretary had no discretion to accept applications three days after the statutory deadline. 2006 ME 50 ¶16, 896 A.2d 933.[2] In *Palesky v. Secretary of State*, the Court found the Secretary could disqualify petitions when the oath was not taken from the circulator, when signatures were not on the approved petition form, and when the signatures had not been approved by the registrar. 1998 ME 103, 711 A.2d 129. The Law Court has not decided whether the Secretary has the discretion to qualify petitions or signatures after determining that any violations are *de minimus. Reed,* ¶ 13, n. 12, ___ A.3d ___.

I.    PETITIONERS OBJECTIONS

The Petitioners make five categories of objections to the Secretary's Amended Determination.

A. **Disqualification based on the circulators who were not registered to vote until after they collected their signatures.**

The Secretary disqualified several signatures because the circulators were not registered voters at the time they collected the signatures. Amended Determination, pp. 1-2. In their brief, the Petitioners only raise the 988 signatures collected by Monica Paul and Michelle Riordan. Petitioner's Brief, pp. 6-7,13-16. Although the Amended Determination, p. 8, identifies 1175 signatures in this category, the court cannot rule on the remaining signatures by other circulators. The other parties have assumed they were abandoned have had no reason to address petitions submitted by any other circulator.

_____

[2] In *McGee*, the court then found the statutory deadline inconsistent with the Maine Constitution and ultimately confirmed the Secretary's decision. ¶ 39.

7

them. The total number of signatures considered after clarification by the Secretary is 988.

In *Hart v. Secretary of State,* the Law Court addressed the constitutionality of the residence requirement that is confirmed in the same provision in the Maine Constitution that requires the circulators to be registered voters. 1998 ME 189, ¶ 13, 715 A.2d 165. The Court "acknowledged that the initiative petition process involves political discourse that is protected by the first amendment of the federal constitution." *Id.* ¶ 9. The Court found, however, that the Maine Constitution's requirements that the circulators be residents served a compelling state interest in the regulation of initiative process. *Id.* The court noted, but did not address, the voter registration requirement at issue here and observed that voter registration issue was on its way to the U.S. Supreme Court. *Id.* ¶ 8. The issue with respect to a circulator's voter registration arose again in *Maine Taxpayers Action Network,* but was not addressed by the majority. 2002 ME 64, ¶¶ 22-29, 795 A.2d 75.

The United States Supreme Court did address the voter registration requirement and ruled that Colorado's requirement that circulators to be registered to vote is unjustified and infringes on the first amendment rights of the circulators to conduct core political speech. *Buckley v. American Const. Law Found.,* 525 U.S. 182, 197 (1999). The Court did not find that the state interest of fraud detection or administrative efficiency justified the requirement. *Id.* at 192. The Court determined that requiring circulators to be registered would eliminate a large pool of registered voters. *Id.* at 194-95. The Court's other reason is that some voter eligible adults have a politically based objection to registering to vote. *Id.* at 195.

In *Initiative & Referendum Institute v. Secretary of State,* the Magistrate for the US District Court for the District of Maine applied *Buckley* to the issue of whether the requirement that circulators be registered voters was constitutional. 1999 U.S. Dist. Lexis

8

22071 (D. Me. April 23, 1999). The *IRI* court noted that the *Buckley* decision was largely based on the numbers of eligible voters in Colorado who were not registered, thus reducing the number of available circulators. *Id.* at **43-46. Evidence in *IRI*, on the other hand, suggested that the percentage of unregistered voters in Maine is low. *Id.* at *45. The court concluded that the State had a compelling interest in locating circulators when investigating the validity of petitions and that requiring voter registration advanced that goal. *Id.* at *46. The *IRI* court noted, however that the State's interest in requiring voter registration was modest, but that the plaintiffs in that case had offered nothing in response. *Id.* at *48. Justice Dana makes similar arguments in his concurrence in *Maine Taxpayers Action Network*, 2002 ME 64, ¶¶ 27-29, 795 A.2d 75.

Both *IRI* and Justice Dana's concurrence are distinguishable from the case at hand. Here, the State disqualified the petitions because the circulators collected signatures prior to registering to vote. The circulators were registered to vote at the time the petitions were submitted to the Secretary of State, satisfying the State's interest to the extent voter registration makes it easier to locate circulators in the event an investigation is necessary. The Secretary has not persuaded the court that the temporal voter registration requirements, which do not appear either in the Maine Constitution or in statute, "are justified by a compelling state interest and are narrowly tailored to serve that interest." *Wyman v. Secretary of State*, 625 A.2d 307, 311 (Me. 1993). Therefore, the court would reverse the Secretary's disqualification of the 988 signatures collected by circulators Riordan and Paul, and challenged by the Petitioner in his Brief, on the grounds those circulators were not registered to vote at the time they collected the signatures. 5 M.R.S.A. § 11007(C)(1).

The Secretary objects to this argument, stating that the constitutionality of these provisions was not properly raised. The Court finds it was adequately pled. *See* Petition

at ¶ 34. The Secretary notes correctly that the issue of constitutionality was not originally briefed. However, the court raised the issue with the parties at its August 21 conference and the parties had time to brief it. Therefore, the court has chosen to address it.

**B. Disqualifications based on petitions filed with the Town of Turner**

The Secretary originally disqualified petitions from the Town of Turner because they were not submitted before the deadline imposed by the Maine Constitution. On remand, the Secretary had four days to review a large volume of material. Secretary's Brief, p. 4. An investigator unsuccessfully attempted to call the Turner Clerk. Although the Secretary felt as though confirming the Clerk's affidavit by phone was an important part of the investigation, time constraints prevented it from happening. Choosing to rely on the date stamps on the petitions, the Secretary chose not to accept the Clerk's affidavit when making the Amended Determination.

Upon further review of the Secretary's Amended Determination, the court was concerned that potential mistakes of a municipal official, as opposed to a notary or circulator selected by the proponents, had disqualified the petitions. The Secretary had insufficient time to complete tasks it determined ware necessary to investigate these signatures. Therefore, the court determined it was necessary to remand the case a second time so that the Secretary could make additional findings towards a determination of whether the Turner petitions were submitted on time. 5 MRSA § 11007(4)(B).[3] The court

---

[3] The court would have preferred to wait until the briefing was completed and then remanded. Unfortunately, it was impossible. The parties treat the statutory August 24 deadline as a hard deadline. 21-A MRSA § 905(2). By late Wednesday, August 19, all the parties had submitted an initial brief. Although the court had not yet decided any of the issues raised, at that point, the court was concerned that the Turner signatures *might* decide the case. Given that the reply briefs were not due to the end of the day on Friday August 21 and a decision due on August 24, the court decided on the remand after a discussion with the parties on Friday morning and after the Secretary indicated a willingness to follow up with the Turner town clerk.

notes that the Secretary and the Petitioners agreed to the remand, but the Committee did object.

After the second remand, the Secretary has determined that the 809 signatures found on petitions certified by the Town of Turner were submitted on time. As such, the Secretary has Supplemented its Amended Determination, concluding that only 10,490 signatures are invalid, rather than the previous number of 11,299.

The Court finds, for the reasons stated in the Supplemental Amended Declaration, that the evidence supports the Secretary's decision.

C. **The Secretary's decision not to disqualify the petition from the Town of Freeport was not an abuse of discretion.**

The Secretary disqualified four petitions from the Town of Freeport on the grounds the town's registrar notarized the petitions the day after they were certified. Amended Determination p. 3. The Secretary determined it ran afoul of the of the requirement in 21-A MRSA § 902 that the circulator's oath be completed before the Town certifies the petitions. A properly administered circulator's oath has been described as a critical step to prevent fraud in the petition process. *Maine Taxpayers Action Network*, 2002 ME 64, ¶ 13, 795 A.2d 75.

The court defers to the Secretary's interpretation of the statute with respect to the timeliness requirement. The Secretary's disqualification of the petition was a reasonable choice and the court is not permitted by law to second guess that. The Freeport petitions are distinguishable from the other Towns at issue in that the late circulator's oath came on a different day. The Secretary's use of that distinction in disqualifying the Freeport petitions instead of the petitions where the town clerk completed the oath on the same day as accepting the petitions was within the Secretary's discretion and was not arbitrary or capricious.

11

The Petitioner argues that she was not actually done her certification on March 5 and should have dated the certification on March 5 instead of March 4. That would be a second date change since the petition was certified. The court notes that the burden of selecting a notary both to complete the oath who does not have a conflict and to get the oath properly completed before the submission of petitions rests on the proponent of the referendum. The Petitioners cannot blame the Town for accepting petitions that have not had the oath completed. The Secretary does not have to accept shifting date changes, particularly after submission the notary's an incorrect affidavit as part of this litigation.

The court's decision is also based on Secretary's obligation and right to manage the petition process. *Maine Taxpayer's Action Network*, 2002 ME 64, ¶ 12, n.8, 795 A.2d 75 (Secretary has "plenary power to investigate and determine the validity of petitions"). The Secretary had to review over 9000 petitions bearing over 70,000 signatures. As part of the management of the process, which is necessary to assure the correct number of qualified signatures are counted, the Secretary has to rely on contemporaneous dates and correctly dated petitions. The burden is on the proponents to manage their end of the process so that the initial submissions are correct. Although the Secretary does listen to efforts to correct errors on remand, it is in the Secretary's discretion to rely on the document in its original form instead of as purportedly corrected. In this case, the notary submitted an affidavit that was incorrect and the Petitioners have asked the Secretary to consider changing first the date of notarization from March 5th to March 4th and then the date of certification from March 4th to March 5th. It is well within the Secretary's discretion to rely on the original dates and the law does not allow the court to weigh competing evidence to overturn the Secretary's position.

D. **The Secretary's disqualification of 24 signatures where notary Kim Pettingill failed to date her notarization.**

12

The same principle applies here. Here, a notary left dates off of petitions totaling 24 signatures. The obligation is on the proponents to get it right the first time. On the original remand the Petitioners provided an affidavit where the notary averred she could reproduce the dates using her log. The Secretary has the discretion to rely on the petitions themselves rather than the subsequent explanation.

After the Amended Declaration was completed, the Petitioners provided a log that they argued supported the notary's position. The Petitioners point out that they had limited time to put together their evidence. Everyone, including the court, is operating under strict time limits. That is why the burden is on the proponents to get the petitions notarized correctly. It also provides less chance to open the process up to outside interpretation or ad hoc interpretation by the courts.

To rule otherwise could endlessly extend the process. That cuts both ways. For example, the Committee has objected to the Secretary's decision to accept the explanation of notaries who also work for the Republican Party. The Committee argued that the petitions should be excluded. The Committee would likely want further investigation into the statements in those affidavits. In managing the investigation, however, it is the Secretary who determines when the evidence is sufficient for the Secretary to choose between two competing versions. The court could not, and sees no reason to, disturb the Secretary's decision on this issue either.

### E. The Secretary's invalidation of 12 signatures as materially altered was within its discretion.

The Secretary invalidated 12 signatures were the dates had been changed. The Secretary points out that he invalidates those signatures only if the obliterated date is undetectable or clearly invalid. The modifications were initialed by the voters to confirm that it is the voter who made the change. The Secretary's concern is fraud and the

13

Secretary is uniquely positioned to determine which alterations pose a risk of fraud and which do not. The invalidations were within the Secretary's discretion.

II. THE INTERVENORS' OBJECTIONS TO PETITIONS VALIDATED BY THE SECRETARY

The Intervenors object to several categories of signatures that the Secretary qualified.

A. **The Secretary had the discretion to validate the signatures found on petitions that were certified the same day in which the circulator's oath was administered.**

The Secretary validated the signatures on certain petitions that were certified by the registrars in the towns of Boothbay, Sidney, Dexter, and Warrant, even though the circulator's oath was or may have been administered prior to the submission of the petition. On remand, the Secretary determined that the circulator's oath on these petitions were administered on the same day that the petitions were submitted. Amended Determination at pg. 2-4.

Title 21-A section 902 governs the verification and certification of petitions. Generally, a circulator must "sign the petition and verify by oath or affirmation before a notary public" that the signatures on the petition are legitimate. Then, "after the petition is signed and verified in this manner, the petition must be submitted to the registrar for certification . . ." If a petition submitted to the registrar "[is] not signed and verified in accordance with [section 902], the registrar may not certify the petition[] and is required only to return the petitions." The Intervenor argues that section 902 requires that the circulator's oath be administered prior to the submission of the petition as a matter of law. However, if the language of a statue is ambiguous, the court must defer to the Secretary's interpretation if that interpretation is reasonable. *Knutson*, 2008 ME 124, ¶ 9, 954 A.2d 1054.

Here, the language of section 902 does not state that a petition submitted to the registrar must be *rejected* if the circulator's oath has not been completed, only that the registrar must return the petition. In response to this, the Secretary has taken the position that a petition's signatures are valid so long as the circulator's oath is administered on the same day that the petition is submitted to the registrar. As such, there is no explicit language in section 902 that makes the Secretary's interpretation is unreasonable. The Secretary is also in the best position to determine whether the same day oath administration is sufficient to prevent fraud. The Secretary also has the discretion to determine the scope of its investigation. Therefore, the decision to validate the signatures certified by the towns of Boothbay, Sidney, Dexter, and Warren was well within the Secretary's broad discretion.

**B. The Secretary had the discretion to validate the signatures found on the petitions notarized by Kim Pettengill.**

The Secretary validated the signatures on petitions that Kim Pettengill notarized even though Pettengill had been reimbursed for certain tasks completed on behalf of the petition campaign. Although the Secretary found that Pettengill had in fact performed these tasks, those tasks were "de minimis" and did not disqualify Pettengill from administering the circulator's oath. Amended Determination at pg. 6. The Secretary's factual findings must be affirmed if "they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Concerned Citizens to Save Roxbury v. Bd. Of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263. Nevertheless, the Intervenor's argue that the Secretary's finding of de minimis impact are contrary to law and therefore does not fall within the Secretary's discretion to resolve factual disputes.

15

Here, there is ample evidence to support the de minimis determination made by the Secretary. The Secretary, after considering evidence submitted by Petitioners, agreed with the Petitioners that the expenses reimbursed to Pettengill were mere "errands of convenience" and therefore did not give rise to any concerns regarding bias or impropriety. This factual determination is well within the Secretary's discretion. The Secretary must be able to determine, as an evidentiary matter, whether or not certain actions are in fact de minimus if he is to carry out his duties effectively. To hold otherwise would strip the Secretary of his fact-finding power. This result is simply inconsistent with the broad discretion afforded to the Secretary. Therefore, the Secretary's decision to validate the signatures on petitions notarized by Pettengill was well within his discretion.

### C. The Secretary had the discretion to validate signatures on petitions notarized by members of the Maine Republican Party State Committee.

The Secretary validated signatures found on petitions that were notarized by members of the Maine Republican Party State Committee. Affidavits submitted by the Petitioners showed that the Republican Party State Committee made no expenditures to notarizes who are registered with the State Committee and made no official action with regard to this particular citizen initiative. Similar to the conclusion reached above, such a factual and evidentiary determination is squarely within the Secretary's broad discretion. Therefore, the Secretary had the discretion to validate the signatures found on the petitions notarized by members of the Maine Republican Party State Committee. While the court recognizes that this issue is of concern, the court defers to the Secretary's conclusion, which is supported by substantial evidence in the record.

### D. The Secretary had the discretion to validate signatures on petitions that were notarized and certified by the same town registrar.

16

The Intervenor argues that the Secretary should have invalidated the petitions that were both notarized and certified by the same town registrar. This argument does not appear to raise any ambiguity in the law. Therefore, given the Secretary's broad discretion in the citizen initiative process, the Secretary had the discretion to validate the petitions that were notarized and certified by the same town registrar and the court sees no need to second guess that decision. It makes sense that a circulator, looking for a notary unlikely to have a conflict of interest, would go to the local town office.

## CONCLUSION

In order for the court to overturn the Secretary's decision, the court must require the Secretary to validate 966 signatures that had been disqualified (after the Secretary reversed it's decision on the Town of Turner petitions). After the Secretary revised the number of signatures invalidated in relation to Monica Paul, the total that are at issue in respect to the voter registration issue is 988. With the Court's decision with respect to those signatures, the Petitioners now have enough signatures. Therefore, the Secretary's decision that the proponents failed to provide the required number of signatures is REVERSED. 5 M.R.S.A. § 11007(C).

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: _Aug 24, 2020_

_____
Thomas R. McKeon
Justice, Maine Superior Court

17